MARCUS C. HOOK, Admr., Appellee, *vs.* BEDELIA F. WRIGHT *et al.*—(MARY McGILLIS *et al.* Appellants.)

*Opinion filed February 24, 1928—Rehearing denied April 4, 1928.*

1. JUDGMENTS AND DECREES—*jurisdiction is essential to validity of decree.* Before a decree can have vitality the court must have jurisdiction of the subject matter and of the person.

2. JURISDICTION—*special statutory jurisdiction must be shown by record—collateral attack.* Whether a court is one of general or limited jurisdiction, if it is exercising a special statutory jurisdiction the record must show upon its face that the case is one where the court has authority to act, as jurisdiction in such cases is never presumed, and if it does not appear the judgment will be void and subject to collateral attack.

3. ADOPTION—*a petition must conform to statute to give court jurisdiction.* A petition for adoption, in order to put the court in motion and give it jurisdiction, must be in conformity with the statute granting the right and must show all the facts necessary to authorize it to act, and if the petition fails to contain all the essential elements the court is without jurisdiction.

4. SAME—*when petition for adoption is not sufficient to confer jurisdiction.* A petition for the adoption of a child which does not give the place of residence of the father, except the allegation that he resided in the State of Michigan, does not state that his residence is unknown, does not state that the father consented to the adoption except the mere allegation that he would consent if knowledge could be conveyed to him, and which makes no reference to desertion of the child by the father, is not sufficient to confer jurisdiction on the court to decree an adoption, and the decree may be attacked in a collateral proceeding for the sale of land to pay debts of the child's estate where different defendants claim the right to inherit from the child.

APPEAL from the Circuit Court of Morgan county; the Hon. FRANK W. BURTON, Judge, presiding.

HARRIS, SMITH & BRYSON, and STEVENS & HERNDON, for appellants.

BELLATTI, BELLATTI & MORIARTY, for appellee.

Mr. COMMISSIONER PARTLOW reported this opinion:

Appellee, Marcus C. Hook, as administrator of the estate of Isaac Lynch, deceased, filed his petition in the circuit court of Morgan county to sell real estate to pay debts. The petition made Bedelia F. Wright, Everett Johnson, the Franklin State Bank, the unknown heirs of Isaac Lynch, the unknown owners of the real estate described in the petition, Mary McGillis and Frank Durning parties defendant. Mrs. Wright filed an answer, in which she alleged that the deed from Michael Lynch to Isaac Lynch for the property sought to be sold was a gift from the grantor to the grantee; that Isaac Lynch was her brother by adoption and that she was his only heir-at-law as to the lands described in the petition. Mary McGillis and Frank Durning, who were a brother and sister of Isaac, filed an answer, in which they alleged that the proceedings in which Isaac was adopted by Michael and Mary Lynch and under which Mrs. Wright claimed to be the sole heir of Isaac were void, for the reason that the petition for adoption failed to state the place of residence of the father of Isaac; that it did not allege that the father consented to the adoption; that the petition was filed and the decree was entered without notice to the father; that the petition did not state and the decree did not find that the father had deserted his son for the space of one year prior to the filing of the petition; that Mrs. Wright was not an heir of Isaac, and that Mary McGillis and Frank Durning were the only heirs to the property described in the petition. The court upon a hearing entered

a decree for the sale of the land, and found that Isaac Lynch by the proceedings in the county court became the adopted child of Michael and Mary Lynch in accordance with the provisions of the statute; that the real estate was acquired by Isaac by gift from Michael Lynch; that Mary McGillis and Frank Durning, as the natural brother and sister of Isaac, took no interest in the real estate as heirs-at-law or otherwise; that Mrs. Wright inherited from Isaac, as his only heir-at-law, the real estate described in the petition. From that decree an appeal has been prosecuted to this court by Mary McGillis and Frank Durning.

The evidence shows that Isaac Lynch was born near Franklin, Morgan county, Illinois, in 1869 or 1870. Thomas Durning was his father and Susan Durning was his mother. The mother died at the time of his birth and his father never re-married. Isaac was the youngest of six children, two of whom, Mary McGillis and Frank Durning, survived him. Michael Lynch had no children. His wife, Mary, had one child, Bedelia F. Wright, a daughter by a former marriage. After the funeral of Susan Durning, Mrs. Wright, who was then eleven years of age, living with her step-father and her mother, went with her step-father to the home of Thomas Durning and they took Isaac to the home of Michael and Mary Lynch. About a week later Thomas went to the Lynch home and told Mrs. Lynch and Mrs. Wright that he was going to move to the State of Michigan, but he did not tell them to what city, town or village in Michigan he was going. As he started to leave, Mrs. Lynch asked him if he did not want to see the baby. He went into the house, looked at the baby and then left. He never saw the child again. He left no clothing for the baby, never sent any money for its support nor communicated with Mr. and Mrs. Lynch. Isaac, from the time he was ten days old, lived with Mr. and Mrs. Lynch. Mrs. Lynch died about 1900, leaving her husband and her daughter surviving. Michael Lynch died in 1901 or 1902,

and Isaac was living with him at that time near Franklin, Illinois, which is about twelve miles from Jacksonville. Mary McGillis testified that her father talked to her about Isaac many times, and that he made an attempt to correspond with him but never received an answer from him; that after Isaac was eighteen years old her brother, Frank Durning, wrote to the post-master at Franklin and learned that Isaac was living, and he then corresponded with him. After the death of Isaac's father, in 1893, Mary McGillis moved to Oregon and her brother moved to Idaho. About 1914 Mary McGillis visited Isaac for two weeks at his home in Franklin. Following this visit they corresponded on an average of once a month until Isaac's death, November 30, 1923. Mrs. Wright resided with her mother and step-father until she was twenty-five years of age, and she assisted her mother in the care of Isaac. After she was married she visited her step-father frequently until his death. She testified that she never visited Isaac after the death of her step-father although she lived in Jacksonville for forty years, with the exception of two years. Michael Lynch made a will, in which he devised the real estate sought to be sold, to Isaac. In the will he recited that "it is my will and desire and I give and bequeath to Isaac Lynch, my adopted son, 100 acres of land," etc. On April 6, 1901, after he had made his will, Michael Lynch executed a deed conveying certain real estate to Mrs. Wright and by another deed conveyed the real estate in question to Isaac. This is the same real estate which had been devised to them by the will of Michael Lynch. Mrs. Wright and Mrs. Freda Hook testified that they were present at the time of the delivery of the deed to Isaac and that the same was a gift. Mrs. Hook had been raised by Mrs. Wright and was the wife of Marcus C. Hook, the administrator of the estate and the petitioner in this case.

On December 8, 1887, Michael and Mary Lynch filed a petition in the county court of Morgan county to adopt

Isaac Lynch. The petition alleged that the petitioners had
resided in Morgan county for twenty-seven years; that
they were desirous of adopting Isaac Lynch, formerly Isaac
Dunnin, (Durning,) who was then about seventeen years
old and had been living with petitioners since he was ten
days old, having been left with them by his father, Thomas
Durning, his mother having died in giving birth to the
child; that the child had no relatives living or residing in
this State; that his father resided in the State of Michigan;
that the child was a male; that the father would cheerfully
consent to such adoption if knowledge could be conveyed
to him of the intention to adopt the child; that the peti-
tioners were of sufficient ability to bring up the child and
furnish him with sufficient nurture and education, and that
they were fit and proper persons to have the care and cus-
tody of the child; that they had no children of their own,
but Mary Lynch had a daughter by a former husband, the
daughter being grown up and married. The written con-
sent of Isaac to the adoption was attached to the petition.

The decree entered by the county court found: "And
now on this day the above cause coming on to be heard
upon the petition and proofs introduced in support of the
facts therein stated, and it appearing to the court from the
petition and evidence herein that said petitioners are resi-
dents of said county and desire to adopt said child; that
said child is a male of the age of about seventeen years;
that said petitioners desire the name of said child changed
to that of Isaac Lynch; that the mother of said child is
dead but the father is living but not in this State, and that
he would willingly consent to such adoption if knowledge
could be conveyed to him, for that said father placed said
child in their custody and control in its infancy, at the age
of ten days, his mother having died in giving birth to said
child; that said child has been living with said petitioners
to the present time; and further, that said petitioners are
suitable and proper persons to have the care, custody and

control of said child, and that it would therefore be to the interest of said child to be the adopted child of said petitioners. It is therefore ordered and adjudged by the court that the said Isaac Dunnin [Durning] be the adopted child of said petitioners and capable of inheriting their estate; that the name of said child be changed to that of Isaac Lynch, and that said petitioners pay the costs of this proceeding."

The sole question is whether the petition and decree are sufficient to sustain the adoption. Section 2 of the Adoption act of 1874, (Rev. Stat. 1874, p. 128,) which was in effect at the time of this proceeding, provided that "the petition shall state the name, sex and age of the child sought to be adopted, and, if it is desired to change the name, the new name, the name and residence of the parents of the child, if known to the petitioner, and of the guardian, if any, and whether the parents or the survivor of them, or the guardian, if any, consents to such adoption." Section 3 provided that "if the court is satisfied that the parents of the child or the survivor of them has deserted his or her family, or such child, for the space of one year next preceding the application, or, if neither is living, the guardian, or if there is no guardian, the next of kin in this State capable of giving consent, has notice of the presentation of the petition and consents to such adoption, or that such child has no father or mother living, and no next of kin living in this State capable of giving consent, or is a foundling, and that the facts stated in the petition are true, and that the petitioner is of sufficient ability to bring up the child and furnish suitable nurture and education, and that it is fit and proper that such adoption should be made, a decree shall be made, setting forth the facts and ordering that from the date of the decree the child shall, to all legal intents and purposes, be the child of the petitioner or petitioners, and may decree that the name of the child be changed according to the prayer of the petition."

The attack made on the proceedings to adopt this child being collateral, the only inquiry proper to be made is whether the county court had jurisdiction to enter the decree. Before the decree can have vitality the court must have jurisdiction of the subject matter and of the person. (*Rabbitt* v. *Weber & Co.* 297 Ill. 491.) Where a court is exercising a special statutory jurisdiction the record must show upon its face that the case is one where the court has authority to act. Jurisdiction in such cases is never presumed, and if it does not appear the judgment will be void and subject to collateral attack. (*Rice* v. *Travis*, 216 Ill. 249; *Payson* v. *People*, 175 id. 267; *Haywood* v. *Collins*, 60 id. 328.) Whatever the rank of the court exercising a special statutory jurisdiction, it is governed by the same rules as courts of limited jurisdiction. (*Calkins* v. *Calkins*, 229 Ill. 68; *Chicago and Northwestern Railway Co.* v. *Galt*, 133 id. 657; *Johnson* v. *VonKettler*, 84 id. 315; *Kennedy* v. *Borah*, 226 id. 243.) The petition required to put the court in motion and give it jurisdiction must be in conformity with the statute granting the right and must show all the facts necessary to authorize it to act, and if the petition fails to contain all of these essential elements the court is without jurisdiction. *Hopkins* v. *Gifford*, 309 Ill. 363; *In the matter of Bohn*, 308 id. 214; *Sullivan* v. *People*, 224 id. 468; *Watts* v. *Dull*, 184 id. 86.

In *Musselman* v. *Paragnik*, 317 Ill. 597, the adoption was under the act of 1874. The father was living and consented to the adoption. The mother was living but no notice was served on her, her name and place of residence were not stated in the petition, it was not alleged that her residence was unknown or whether or not she consented to the adoption. After reviewing many prior decisions of this court, on page 602 it was said: "The decisions agree that the least that can be required to sustain the jurisdiction of the county court to make an order of adoption is, that the record should show a petition containing the necessary re-

quirements to sustain the jurisdiction,—that is, a petition containing the statements which the statute says the petition shall state. This petition did not state the name and residence of the mother or that they were unknown to the petitioners or whether she consented to the adoption. The statute requires a petition stating these facts before the court is authorized to act. Until such a petition was filed the case was not within the jurisdiction of the county court. It was not a case in which the court had a right to deliberate and was not a case committed to the court by law. This question received a full consideration by the court at its last term in a case in which a rehearing has been denied at this term, (*Keal* v. *Rhydderck,* 317 Ill. 231,) in which there is a review of the previous decisions of the court. In accordance with the views announced in the opinion in that case the order of adoption of the appellee made by the county court of Perry county was without jurisdiction and void."

In *Keal* v. *Rhydderck, supra,* the adoption was under the amendment of 1907, which contained practically all of the provisions of the act of 1874 and many others. The mother of the child was insane. The petition gave the name of the mother, alleged that she was insane, and that the name and residence of the father were unknown. The petition did not state that the parents, or either of them, consented to the adoption, or that the parents, or either of them, were unfit to have the custody of the child. There were other defects in the petition which are not applicable here. Prior decisions were reviewed, and it was held that to give the court jurisdiction a petition conforming to the requirements of the statute is necessary; that the petition must state that the parents, if living, consent to the adoption, or must give some reason specified in section 3 of the Adoption act why either one or both of the parents are unfit to have the custody of the child; that the statement that one of the parents is insane and the whereabouts of the

other is unknown is not sufficient; that where the court is exercising a special statutory jurisdiction there is no presumption of jurisdiction but the record must show upon its face that the case is one in which the court has authority to act, and if such does not appear to be the case the judgment is void and subject to collateral attack, whether the court is one of general or limited jurisdiction.

The petition in the case now before us did not give the place of residence of the father, as required by the statute. It merely alleged that he resided in the State of Michigan. This allegation was not in compliance with the statute. As far as notice to the father was concerned, it might as well have alleged that he lived in the United States or in North America. Neither was this allegation equivalent to an allegation that his place of residence was unknown. The petition did not allege that the father consented to the adoption. His willingness to consent if knowledge could be conveyed to him was not equivalent to an allegation that he did consent. Even though he was willing to consent but did not do so, such willingness would not be a compliance with the statute. Both the petition and the decree were defective in each of these respects. This proceeding was based upon the ground that the father had deserted the child for a space of almost seventeen years next preceding the application. Section 3 provided that the court should be satisfied that the parents of the child, or the survivor of them, had deserted the child for the space of one year next preceding the application. Neither the petition nor the decree made any reference or finding as to such desertion. Section 2 provided that if it is desired to change the name of the child the new name shall be stated in the petition. The petition contains no allegation with reference to a change of name, but the decree changed the name to Isaac Lynch. Section 3 provided that the decree shall set forth the facts. The decree in this case did not set forth all of the facts. The petition not being in compliance with the

statute, under authority of the last two cases above cited the court did not acquire jurisdiction to make the adoption.

The judgment of the circuit court will be reversed and the cause remanded.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded.*