## CARTER OIL CO. v. NORMAN et al.
### No. 8030.

Circuit Court of Appeals, Seventh Circuit.
Nov. 17, 1942.

Rehearing Denied Dec. 16, 1942.

Ivan J. Hutchens, C. C. Martin, and F. R. Wiley, all of Decatur, Ill., for appellants.

Walter Davison, of Mattoon, Ill., and W. M. Acton, of Danville, Ill., for appellee.

Before SPARKS, KERNER, and MINTON, Circuit Judges.

KERNER, Circuit Judge.

This is another case involving the ownership of the gas and oil on a tract of land in Fayette County, Illinois. Plaintiff filed a complaint for an injunction to restrain the defendants from entering upon and drilling for oil and gas on the land in question. The defendants answered, claiming ownership of the land in themselves. The court heard the evidence and entered a decree that the defendants had no right, title or interest in and to the lands or in the oil and gas; that the plaintiff was the owner of all the oil and gas in and under the land involved, and permanently enjoined the defendants from asserting any title or interest in and to the premises as against the rights of the plaintiff. To reverse the decree, defendants appeal.

Plaintiff claims title to the gas and oil by virtue of a lease dated September 23, 1936, executed by the First National Bank of Vandalia, whose source of title was the partition of the estate of Adre L. Watson.

The record discloses that on December 5, 1904, Mary E. Watson, afterwards Norman, out of wedlock gave birth to Cletis J. Watson, who from infancy until his death lived with his grandmother. September 16, 1921, his grandparents filed in the County Court of Fayette County, Illinois, their petition—"In the Matter of the Adoption of Cletis J. Watson" alleging that "he * * * is desirous of adopting a child so as to render it capable of inheriting his estate. That the name of the * * * child is Cletis J. Watson * * *. * * * that the father * * * is unknown, but the Mother is still living and consents to the adoption * *. * * * that he and his wife, Adre L. Watson are both desirous that said adoption (*sic*) shall be made and * * * Cletis J. Watson is also willing * * *." The petition was signed by George A. Watson and Adre L. Watson and verified by George A. Watson. Attached to the petition was the consent of Mary E. Norman to the adoption. In this consent Mary E. Norman certifies that she is the mother of Cletis, waives service of process, enters her appearance in the case, and consents to the entry of a decree of adoption. On the same day, the court entered a decree finding, inter alia, that the *petitioners* were desirous of adopting Cletis; that Cletis and his mother both consented to the adoption; that Adre L. Watson, wife of George A. Watson, joined in the petition; and decreed that Cletis J. Watson be the adopted child of *George A. and Adre L. Watson.*

George A. Watson died on February 4, 1924, and on February 14, 1924, Adre L.

Watson filed her verified petition in the Fayette County Court for letters of administration in his estate, alleging that the deceased left surviving him Adre L. Watson, his widow, Mary E. Norman and eight other children by birth, and Cletis J. Watson, an adopted son. February 27, 1924, Adre L. Watson filed in the Fayette County Circuit Court a complaint to partition the land owned by George A. Watson, deceased, in which she averred that the deceased left surviving him the nine children by birth and "Cletis J. Watson, an adopted grandson, a child of a daughter." Mary E. Norman, in her answer to the complaint, admitted that George A. Watson left as one of his heirs at law, the adopted son. On March 21, 1925, the court decreed that the deceased had left surviving him Cletis J. Watson, an adopted son.

On July 1, 1925, when Cletis J. Watson was twenty years of age, Adre L. Watson, by her warranty deed, conveyed to Cletis J. Watson the forty acres involved in this case, reserving, however, a life estate to herself.

On September 16, 1926, Mary E. Norman filed a verified petition in the Shelby County Court averring, and the court found, that Cletis had died intestate on September 4, 1926, leaving surviving him Mary E. Norman, his natural mother; *Adre L. Watson, his adopted mother;* William J. and Ward T. Norman, his half brothers; and Theo A. Norman and Catherine E. Norman, his half sisters.

On October 31, 1926, Adre L. Watson died testate. By her will she devised "all of the property that I may own at the time of my death, wherever the same may be located, both real and personal, to the following, To Myrtle Watson Larimore, my daughter, and to Cletis J. Watson, *my adopted son,* who is also my grandson, share and share alike, to be their absolute property forever." (Italics supplied.)

On December 31, 1927, Myrtle Larimore brought her partition suit in the Fayette County Circuit Court for the partition of the land in question, *alleging that Cletis J. Watson was a duly adopted son of George A. and Adre L. Watson;* that Cletis had died intestate, leaving surviving him no widow, child or descendent of a child; that on July 1, 1925, Adre L. Watson had conveyed the land in question to her adopted son, Cletis, as a gift; and named her eight brothers and sisters as defendants. The eight children of Adre L. Watson, includ-

ing Mary E. Norman, in writing, entered their appearance in the partition suit. The court entered a decree finding that the children had entered their appearance; that Cletis J. Watson was an illegitimate child of Mary E. Norman, and when a very young child, had been legally adopted by George A. and Adre L. Watson; that Adre L. Watson had conveyed the land to Cletis as a gift, who at the time of his death was the owner in fee of the land; that by virtue of the laws of the State of Illinois the land passed to and became the property of Adre L. Watson, his adopted mother; and the court decreed that under the will of Adre L. Watson, Myrtle was the owner of nine-eighteenths of the land and that each of the surviving children of Adre L. Watson, including Myrtle Larimore, was the owner of one-eighteenth interest. The land not being susceptible of division, the court ordered the land sold, and it was sold at public auction to Myrtle and George Larimore; the sale was approved by the court, a deed was issued to the purchasers, and the proceeds of the sale was divided among the owners. By mesne conveyance the title, on November 15, 1935, vested in the First National Bank of Vandalia.

On June 4, 1940, Mary E. Norman caused an affidavit to be recorded in which she claimed an interest in the land. Thereafter, the plaintiff filed its complaint.

In her answer to the complaint in the instant case, Mary E. Norman claimed that her children had an interest in the land because they were the half brothers and half sisters of Cletis, and she averred that during the lifetime of Cletis, the land had been conveyed by Adre L. Watson to him for a valuable consideration, and that even if Cletis was the legally adopted son of Adre L. Watson, his natural grandmother, the land would descend to Mary E. Norman and his half brothers and half sisters and would not be inherited by Adre L. Watson. By an amended answer filed October 18, 1941, she claimed the adoption of Cletis was invalid.

The District Court made a number of separate findings of fact. He found that the decree of adoption was valid; that Cletis J. Watson had been duly adopted by George A. and Adre L. Watson; that on July 1, 1925, Adre L. Watson had conveyed by warranty deed to Cletis J. Watson the forty acres in question; and that said conveyance was, in fact, a gift. He was of

the opinion that the defendants had no right, title or interest in and to the land or the gas and oil underlying it.

The defendants contend first that the court erred in finding that Cletis J. Watson was legally adopted. The argument is that the attempted adoption was a nullity because of a failure to comply with the statute.

An adoption proceeding, it is true, is statutory, and jurisdiction of the subject matter and of the person is each a prerequisite to the validity of a decree of adoption, Hook v. Wright, 329 Ill. 299, 160 N.E. 579, and the record of the proceeding must show a substantial compliance with the statute to give the court jurisdiction in exercising the statutory powers conferred, yet, in the consideration of defendant's contention, it is well to remember that since the right of adoption is not only beneficial to those immediately concerned but likewise to the public, construction of the statute should not be narrow or technical nor compliance therewith examined with a judicial microscope in order that every slight defect may be magnified, —rather, the construction ought to be fair and reasonable, so as not to defeat the act or the beneficial results where all material provisions of the statute have been complied with. McConnell v. McConnell, 345 Ill. 70, 177 N.E. 692. Much more does this principle apply where the parties to the adoption proceedings are not objecting, the inquiry in such case being narrowed to the jurisdiction of the subject matter. Ashlock v. Ashlock, 360 Ill. 115, 195 N.E. 657.

Section 1 of the Adoption Act, chapter 4, Smith-Hurd Stats., c. 4, Cahill's Ill.Rev. St.1921, in force at the time of the adoption proceeding, provided that any reputable person might petition the county court for leave to adopt a child. Section 2 provided that the petition should be verified by the petitioner; that the petition should state the name, if known, the sex, and the approximate age of the child sought to be adopted, the name of each of the parents or of the surviving parent of a legitimate child or of the mother of an illegitimate child, the residences of such parties; and that all persons so named in such petition should be made defendants. Section 3 provided that if the Court found the mother of an illegitimate child consented to the adoption and that the facts stated in the petition were true—that the petitioner was of sufficient ability to bring up the child and furnish suitable nurture and education, and that it was fit and proper and for the best interest of the child that such adoption be made—a decree should be rendered, setting forth the facts and ordering that from the date of the decree the child should, to all legal intents and purposes, be the child of the petitioner or petitioners.

The defendants make the point that the adoption and the consents of the mother and child were not filed in the office of the clerk of the county court; that the affidavit attached to the adoption petition was defective; that it was sworn to four days after it was filed before an officer not empowered to administer oaths; that the consent of the father was not obtained and those of the mother and child were insufficient; and that the address of the mother was not stated nor were the child's parents or the child made defendants.

We have considered these points, as well as the claim that the court erred in permitting plaintiff's exhibit 1-a to be introduced in lieu of exhibit 1, and we are convinced they are without merit.

The adoption petition was filed with the county clerk on September 12, 1921, and sworn to on September 16 before Geo. A. Brown, county clerk, the affiant stating that the "facts" contained in the petition were true.

Section 1, c. 101, Smith-Hurd Stats., section 1, c. 101, Cahill's Ill.Rev.St. 1921, provided that all courts and each clerk thereof should have the power to administer oaths concerning anything commenced, or to be commenced or depending before them, and § 1, c. 131, subd. 8 of the same statutes provided that the words "county clerk," should be held to include clerk of the County Court, and the words "clerk of the County Court" to include "county clerk"; consequently, the verification was before an officer empowered to administer oaths and the adoption petition was filed in the office of the clerk of the County Court. The fact that the petition bore the file mark of the county clerk has no legal significance, Village of Averyville v. City of Peoria, 335 Ill. 106, 166 N.E. 488, and Corbly v. Corbly, 202 Ill.App. 469. We think the fact that the petition was sworn to after it was filed and before the cause was heard and the decree thereafter entered, did not prevent the court having jurisdiction, since the statute on amendments and jeofails, chapter 7, Smith-Hurd Stats.

c. 7, Cahill's Ill.Rev.St.1921, permits amendments in any pleading, either in form or substance, for the furtherance of justice before judgment is rendered; nor did the defective affidavit defeat the jurisdiction of the court when, as here, it is assailed in a collateral proceeding. Kruse v. Wilson, 79 Ill. 233, Hogue v. Corbit, 156 Ill. 540, 41 N.E. 219, 47 Am.St.Rep. 232, and Booth v. Rees, 26 Ill. 46, 49.

 Nor are we impressed with the criticism heaped upon the consents. It is true they were entitled "In the Probate Court of Fayette County," but that fact did not make them insufficient. The consents stated they were "In the Matter of the petition of George A. Watson, praying that Cletis J. Watson may be adopted" and bore the file mark "Geo. A. Brown, Co. Clk." In such a situation the words "In the Probate Court of Fayette County" may be rejected as surplusage, Miller v. Blow, 68 Ill. 304. Neither were the proceedings void because the mother and child were not designated as defendants, McConnell v. McConnell, supra, or because the address of the mother was not stated, Flannigan v. Howard, 200 Ill. 396, 65 N.E. 782, 59 L.R.A. 664, 93 Am.St.Rep. 201, or because the consent of the father was not obtained, Blacklaws v. Milne, 82 Ill. 505, 15 Am.Rep. 339; Barnard v. Barnard, 119 Ill. 92, 8 N.E. 320; Yockey v. Marion, 269 Ill. 342, 110 N.E. 34. Moreover, where one has invoked the jurisdiction of a court in an adoption proceeding, she cannot question such jurisdiction in a subsequent proceeding, Hopkins v. Gifford, 309 Ill. 363, 141 N.E. 178; especially is that so where, as here, the defects are not substantial, Flannigan v. Howard and Hopkins v. Gifford, supra. In our case Mary E. Norman consented to the adoption and the validity of the adoption was not questioned until October 18, 1941, twenty years after the court had decreed that Cletis J. Watson had been legally adopted. It is clear from this record that Cletis J. Watson and the adopting parents, as well as Mary E. Norman, each understood and considered that Cletis J. Watson had been legally adopted by George A. and Adre L. Watson.

The defendants next contend that the court erred in finding that the deed by which Adre L. Watson conveyed the land to Cletis J. Watson was a gift, and they point to the fact that the deed was regular on its face and recited a consideration of $1.00, and to the fact that there was testimony that Adre L. Watson said she sold the land to Cletis to pay for her keep.

 The record does not disclose that the defendants preserved all of the testimony of the witnesses, and since the findings of the court are based on evidence which is not in the record before us, we must accept the finding as correct. Bernards v. Johnson, 9 Cir., 103 F.2d 567, 571; In re Wilton-Maxfield Management Co., 9 Cir., 117 F.2d 913, 914; and In re Swartz, 7 Cir., 130 F.2d 229, 231.

We now consider defendants' main contention, that if the adoption of Cletis was valid and his acquisition of the land was by gift from his maternal grandmother, the plaintiff's title fails, and § 6 of the Adoption Act, Smith-Hurd Stats. c. 3, § 165 note, causes the property to pass under the Statute of Descent to his natural heirs.

Section 2 of the Statute of Descent, chapter 39, Smith-Hurd Stats., c. 39, Cahill's Ill.Rev.St.1921, provides that an illegitimate child shall be an heir of its mother and any maternal ancestor and take by descent, and that his estate, when there is no widow and no child or descendants of a child, shall descend to and vest in the mother and her children.

Section 5 of the Adoption Act, Smith-Hurd Stats. c. 3, § 165 note, provided that an adopted child should be deemed, for the purpose of inheritance by such child, the child of his parents by adoption, the same as if he had been born to them in lawful wedlock, and § 6 of the Adoption Act provided that the parents by adoption should take by descent only such property as he had taken from the adopting parents by gift, *"but the parents by adoption * * * shall not inherit any property which such child may take, or have taken, by gift * * * from his kindred by blood."*

The defendants insist that since Adre L. Watson was kindred by blood to Cletis, the exception in § 6 barred her and her heirs from inheriting from Cletis, and the title to the land passed by descent to them—his natural mother and half brothers and half sisters—and since the half brothers and sisters were not made defendants to the Myrtle Larimore partition suit, the decree did not and could not deprive them of the title that they acquired by descent from Cletis J. Watson.

The defendants argue that the purpose of § 6 was to cover two kinds of adoptive parents: those who were related by blood

to the adopted child and those who were not. That where the adoptive parents are not related by blood ties to the adopted child, they inherit the property they gave to the child, but if they are kindred by blood, they cannot inherit the property they have given him.

The plaintiff, on the other hand, argues that in construing the Act, courts are not confined to the literal meaning of the words used, but must keep in mind the object and purpose that the legislature had in view and endeavor to arrive at the legislative intent, and if the evident purpose of the Act was to give the adoptive parents the right to inherit from the adopted child property that had been given to the child by the adoptive parents, it should be so construed.

At common law an illegitimate child was of kin to nobody. He was incapable of being heir to any one, or of having heirs. So, too, the right to adopt a child and the right of a person to be adopted as the child of another, was unknown to the common law. Recognizing the injustice of such a law in the one instance and the lack of such a law in the other, the legislature removed, to a great extent, the disqualification of the illegitimate to be an heir or to have heirs, and provided for the adoption of children by enacting statutes of Descent and Adoption, changing and modifying the incidents of the natural relationship between an adopted child and his kindred by blood. Accordingly, a child may be adopted and his property descend to his relations by blood rather than to his adoptive parents, unless the statute by explicit provision or necessary construction excludes the kindred by blood in favor of the adoptive parents.

The courts of Illinois have not spoken in a case involving a situation such as exists in this case. However, in a case where an adopted child had acquired land by gift from his adoptive parent, the court, in discussing the case, said: "Section 6 unmistakably discloses the legislative intent to be that the beneficial interest in property which an adopted child has acquired by gift or inheritance from an adoptive parent shall, when the adopted child is dead * * * and no husband or wife survives, return to said adoptive parents * * *." Swick v. Coleman, 218 Ill. 33, 39, 75 N.E. 807, 809. While it is true that that case is not decisive of the question here involved, it has a bearing upon the interpretation to be placed upon § 6 of the Adoption Act.

It has frequently been said that in determining the intent of the legislature, the language used, the evil to be remedied, and the object to be attained are to be considered, and if the language employed admits of two constructions, one of which makes the enactment absurd, while the other renders it reasonable and wholesome, the construction which leads to an absurd result should be avoided. People v. Elgin, Home Protective Ass'n, 359 Ill. 379, 194 N.E. 584; Jones v. Pebler, 371 Ill. 309, 20 N.E.2d 592, 125 A.L.R. 451, and People v. McKinstry, 379 Ill. 528, 42 N.E.2d 68.

Applying the foregoing principles, it is clear that § 5 of the Adoption Act was intended to make an adopted child the lawful child of the adoptive parents for all purposes of inheritance, as much as though he had been born to them in lawful wedlock, and that § 6 was not intended to give to the adoptive parents the general right to inherit as natural parents have, but it was intended to give to the adoptive parents the right to inherit such property as they had given to the adopted child. Consequently, we are impelled to the conclusion that the words "from his kindred by blood" ought not to be held to apply to the property received from the adoptive parent merely because the adoptive parent happened to be related by blood to the adopted child. Compare Wunderle v. Wunderle, 144 Ill. 40, 33 N.E. 195, 19 L.R.A. 84. The court was right in holding that the defendants had no right, title or interest in and to the land or the gas and oil underlying it. The decree will be affirmed.

It is so ordered.