IN RE ESTATE OF GRACE G. YOUMANS.
CHARLES M. YOUMANS AND ANOTHER v.
MARILYN YOUMANS.[1]

July 21, 1944.

No. 33,734.

[1]Reported in 15 N. W. (2d) 537.

*A. W. Sawyer* and *Sawyer & Sawyer,* for appellants.

*Herbert M. Bierce* and *E. W. McManus,* for Marilyn Youmans, by Helen S. Johnstone, her guardian, respondent.

PETERSON, JUSTICE.

In this case Marilyn Youmans claims the right to inherit the distributive share which her adoptive father, Edward L. Youmans, would have inherited from his mother, Grace G. Youmans, the decedent, had he survived her. Marilyn's right to inherit is resisted by Grace G. Youmans' surviving husband and daughter upon the grounds (1) that the alleged adoption is void under the law of Illinois, where it took place, and (2) that, if the adoption is valid, Marilyn is without capacity to inherit from the decedent as a lineal kindred of the adoptive father in virtue of a provision in the Illinois law that adoptive children shall not have capacity to inherit from the lineal or collateral kindred of the adoptive parents.

On April 10, 1942, Grace G. Youmans died intestate at Winona, where she was a resident. The residue of her estate for distribution consisted of personal property valued at $20,490.13, comprising certain jewelry, cash in bank, corporate stocks, and a United States Series E savings bond. Decedent's husband and a daughter survived her. The decedent was the mother of Edward L. Youmans, who predeceased her, leaving no surviving spouse or children of his body. During his lifetime he and his wife procured a decree for the adoption of Marilyn, who claims to be his adopted child. She is not a blood relative of her adoptive father or of the decedent. Her right to inherit depends upon her status as an adopted child.

The adoption proceedings were had in the county court of Cook county, Illinois, which had jurisdiction in the premises under the constitution and statutes of the state of Illinois. Illinois Const. art. VI, § 18; Smith-Hurd Rev. St. Illinois, 1929, c. 37, §§ 171-177; *Id.* c. 4, § 1.

The statutes under which the adoption proceedings were had are found in Smith-Hurd Rev. St. Illinois, 1929, c. 4. The form of petition is prescribed by § 2, which so far as here material provides

that the petition shall state, "if it is desired to change the name [of the adopted child], the new name"; that the mother be made a party to the proceedings; and that "the petition shall also state the residences of such parties so far as the same are known to such petitioner."

The petition for the adoption of Marilyn was joined in by Edward L. Youmans and his wife. It was filed on April 29, 1930. The body of the petition contained no allegation that petitioners desired to have the adopted child's name changed, but the prayer for relief did, without specifying the proposed changed name. It alleged "that the residence of the mother of said child, so far as is known to your petitioners is Chicago, Illinois." No street address or other details concerning the place of residence were given.

Marilyn was the child of Frances Parrish, who under date of March 20, 1930; gave written consent to the adoption. The consent bore the title and file number of the adoption proceedings and was filed with the petition on April 29, 1930. No process or notice of any kind was served on the mother. The consent recited that by it the mother entered her appearance in the case, waived issuance and service of summons, and consented to an immediate hearing and to the entry of a decree of adoption as prayed; but the mother made no other appearance and took no part in the trial.

On October 7, 1930, the court granted a decree of adoption, which among other things provided that Marilyn "shall, to all legal intents and purposes, be the child of the petitioners, Edward L. Youmans and Helen S. Youmans, and for the purpose of inheritance and all other legal incidents and consequences, shall be the same as if she had been born to them in lawful wedlock." Although there was no basis therefor in the petition, the court in the decree changed the name of the child to Marilyn "Youman."

In opposition to Marilyn's right to inherit it is claimed (1) that the adoption decree is void upon the grounds: (a) it failed to allege the residence of the mother of the adopted child as required by the Illinois statute, and (b) it contained a provision changing the adopted child's name with no basis therefor in the petition;

and (2) that, even if the decree was valid, an adopted child's status is so qualified and limited by § 5 of the Illinois statute[2] that it lacks capacity to inherit from the adoptive parents' lineal and collateral kindred. Marilyn contends that the adoption decree is valid and that her right to inherit is governed by Minn. St. 1941, § 259.07 (Mason St. 1927, § 8630),[3] which provides that an adopted child shall inherit from the relatives of the adoptive parents the same as if it were their natural child.

The probate court held that Marilyn was entitled to inherit her adoptive father's share of his mother's estate. The district court affirmed. The surviving husband and daughter of the decedent. appeal.

■ · It will be observed that the allegation in the petition concerning the mother's residence is in the language of the statute. The statute requires the petition to state the residence *so far as the same is known to the petitioner*. The petition states that the mother's residence *so far as is known to the petitioner* is Chicago, Illinois. On its face, the petition complied with the statute and is sufficient. It does not appear, nor is it claimed, that petitioners had any knowledge concerning the mother's residence other than that stated.

---

[2] "A child so adopted shall be deemed, for the purposes of inheritance by such child, and his descendants and husband or wife, and other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them in lawful wedlock, *except that he shall not be capable of taking property expressly limited to the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation*." (Italics supplied.)

[3] "Upon adoption such child shall become the legal child of the persons adopting him, and they shall become his legal parents, with all the rights and duties between them of natural parents and legitimate child. By virtue of such adoption, he shall inherit from his adopting parents or their relatives the same as though he were the legitimate child of such parents, and shall not owe his natural parents or their relatives any legal duty; and, in case of his death intestate the adopting parents and their relatives shall inherit his estate, as if they had been his parents and relatives in fact."

It is conceded that the validity of the adoption decree is to be determined by the law of Illinois. The rule seems to be settled in that state that adoption proceedings involve the exercise of statutory jurisdiction; that jurisdiction in such cases is never presumed; that in the particular case the court can acquire jurisdiction of the subject matter only if the petition conforms to the requirements of the statute; and that, if the petition does not conform to such requirements, the proceedings and the decree, if any, are void and subject to collateral attack. Ashlock v. Ashlock, 360 Ill. 115, 195 N. E. 657; Keal v. Rhydderck, 317 Ill. 231, 148 N. E. 53. Apparently, in determining the validity of adoption decrees, the courts of Illinois in some cases have applied the rule of strict compliance and in others that of substantial compliance. In McConnell v. McConnell, 345 Ill. 70, 177 N. E. 692, after reviewing its prior decisions, the court set the matter at rest by holding that the rule of substantial compliance is to be followed and by overruling statements to the contrary in prior decisions such as Keal v. Rhydderck, *supra*. The court stated that, while there must be substantial compliance with the provisions of the statutes conferring jurisdiction, the construction of such statutes should not be so narrow and technical as to defeat the intention of the act or its beneficial results where all material provisions of the statute have been complied with, and that adoption statutes should receive a fair and reasonable construction "to the end that the adoption may be upheld and the assumed relationship sustained." In that view, the allegation here as to the mother's residence complied with the statute. In cases requiring the complainant to state the residence of the defendant for purposes of constructive service of process, where it appears that according to the complainant's information the defendant's residence is in a certain city, the Illinois court has held that it is sufficient to state the place of defendant's residence as such city without giving the street address. Hannas v. Hannas, 110 Ill. 53 (San Francisco, California); Burke v. Donnovan, 60 Ill. App. 241 (St. Louis, Missouri). By analogy, the statement of the address as Chicago, Illinois, in the instant case, is sufficient

under the Illinois decisions. The case of Hook v. Wright, 329 Ill. 299, 160 N. E. 579, is cited contra, but we think that case is not in point. In that case the court held that an allegation that the residence of the father of the adopted child was in Michigan, without more, was insufficient and that the decree of adoption for that reason, among others, was void. The court treated the allegation as one made upon knowledge of the petitioner and as insufficient in substance. It clearly indicated that if the residence had been stated to be unknown to the petitioner the result would have been different. It said (329 Ill. at p. 307, 160 N. E. at p. 582): "Neither was this allegation equivalent to an allegation that his place of residence was unknown." Here, the allegation involved is equivalent to an allegation that the mother's residence, except as stated, was unknown. The allegation that it was Chicago, Illinois, so far as known, was in effect an allegation that further particulars were unknown. Furthermore, the Hook case was decided upon the authority of Keal v. Rhydderck, *supra,* which applied the rule of strict compliance and which was overruled by the McConnell case so far as it applied such rule.

We think that the petition was sufficient as against the objection mentioned.

■ The point that the decree is fatally defective because it contained a provision changing the adopted child's name to Marilyn Youman, without any basis for such relief in the petition does not merit extended discussion. It is plain that the Illinois statutes authorize an adoption without change of name of the adopted child. The petition in the instant case was for such an adoption. Therefore, it was sufficient to authorize the decree of adoption. It is only where it is desired to change the adopted child's name that the fact with respect to that matter must be alleged. It may be that the decree is void so far as it changes the adopted child's name, but that does not render it void *in toto.* Reliance is placed on a statement in Hook v. Wright, *supra* (329 Ill. at p. 307, 160 N. E. at p. 582), to the effect that the decree there involved granted a change

of name without an appropriate allegation in the petition therefor. The decree was not held void upon that ground, but upon others.

■ The contention of the surviving husband and daughter that Marilyn is not entitled to inherit from her adoptive father's mother in virtue of the provision of the Illinois statute that an adopted child shall not be capable of taking by right of representation from lineal or collateral relatives of the adoptive parents, and that of Marilyn that she is entitled to inherit from such relatives in virtue of the provisions of the statute of Minnesota that an adopted child shall inherit from such relatives raise the question whether the law of Illinois or of Minnesota governs in determining the rights of a child adopted in Illinois to inherit from the adoptive father's lineal or collateral relatives residing in Minnesota.

The authorities on this subject are in conflict. The majority rule, as it is called, draws a distinction as between the status acquired by adoption and the rights flowing therefrom. It holds in effect that the status of the parties is governed by the law of the place of the domicile of the adopted child; that rights of inheritance are governed in the case of realty by the law of the place where it is located *(lex rei sitae)*; and in the case of personalty by the law of the place where the decedent was domiciled *(lex domicilii decedentis)*. The minority rule treats any limitation upon the adopted child's right or capacity to inherit under the laws of the place where the adoption took place as a qualification or limitation upon the child's capacity to inherit, which attaches to the adopted child and follows it wherever it may go, regardless of local laws governing descent. The majority rule, which we adopt, is deemed to be more sound in principle. It takes notice, as the minority rule does not, of the fundamental differences between status and rights flowing therefrom and the basis therefor. By observing the distinction between status and the rights flowing therefrom, the majority rule accords with fundamental and generally accepted concepts, subject to certain exceptions not here material, that the validity of a person's status is governed by the law of his domicile; that a status validly created will be recognized and upheld everywhere, except

where it is inconsistent with local law and policy; and that rights flowing from status are governed by the law of the place where the transaction involved occurred. Lamar v. Micou, 112 U. S. 452, 5 S. Ct. 221, 28 L. ed. 751; Annotation, Ann. Cas. 1917C, 537; Gray v. Gray, 87 N. H. 82, 174 A. 508, 94 A. L. R. 1404. See, Kyle v. Kyle, 210 Minn. 204, 297 N. W. 744; 11 Am. Jur., Conflict of Laws, § 16. We have adhered to these principles in cases involving the status of persons and the descent and testamentary disposition of property. State ex rel. Larson v. Larson, 190 Minn. 489, 252 N. W. 329; In re Estate of Hencke, 212 Minn. 407, 4 N. W. (2d) 353; 1 Dunnell, Dig. & Supp. § 1555. It is well settled that descent and testamentary disposition of property are governed either by the *lex rei sitae* or the *lex domicilii decedentis,* as the case may be. As said in Martinez v. Gutierrez (Tex. Com. App.) 66 S. W. (2d) 678, 681, affirming judgment in Gutierrez v. Martinez (Tex. Civ. App.) 37 S. W. (2d) 833:

"* * * Those decisions [cited under contrary rule] treat the law as to what the adopted child may or may not inherit as being a qualification of the capacity to inherit rather than as a part of the law of inheritance and a limitation or restriction of the right to inherit. Such decisions run counter to the ancient and well-settled doctrine that real estate, its ownership, conveyance, and descent, are exclusively subject to the laws of the state or nation in which it is situated."

In cases other than adoption it has never been thought that rights incident to status attached to the person and followed him wherever he went. There is no more reason for holding that this is true in cases of adoption than in other cases. The weight of reason as well as that of authority supports the majority rule. 1 Am. Jur., Adoption, §§ 69, 70; 2 C. J. S., Adoption of Children, § 66; Restatement, Conflict of Laws, §§ 142, 247, 305, *comment c.*

The majority rule was applied in well-considered cases by the Kansas and South Dakota courts holding that the law of Illinois governed as to the status of a child validly adopted there and that the law of Kansas and South Dakota, respectively, governed as to

the right to inherit by or through such an adopted child. In re Estate of Riemann, 124 Kan. 539, 262 P. 16, it was held that a child adopted in Illinois was entitled under the law of Kansas, as the *lex rei sitae* as to land and the *lex domicilii decedentis* as to personal property, to inherit from the adoptive father's brother land situated in Kansas because of its location there and personal property because he was a resident thereof at the time of his death. In Calhoun v. Bryant, 28 S. D. 266, 133 N. W. 266, the adoptive parent was held entitled to inherit from her child adopted in Illinois land located in South Dakota.

While we held in Fiske v. Lawton, 124 Minn. 85, 144 N. W. 455, and In re Trust Under Will of Holden, 207 Minn. 211, 291 N. W. 104, that the child adopted in each of those cases outside the state was entitled to inherit and take under our statutes, neither case involved the point now under consideration.

It is plain that under our statute the right of an adopted child to inherit is the same as that of a natural child. In re Trust Under Will of Holden, *supra;* Bakke v. Bakke, 175 Minn. 193, 220 N. W. 601. The operation of our statute is not limited to children adopted thereunder in this state by the words "upon adoption *such* child," etc. The word *such* does not refer to any particular manner or method of adoption. The language of a former statute was that the child "by virtue of such adoption" shall acquire a certain status and rights. We held in Sorenson v. Rasmussen, 114 Minn. 324, 131 N. W. 325, 35 L.R.A.(N.S.) 216, involving a child adopted prior to the enactment of the statute, that the statute referred to adopted children without regard to how they acquired that status and not to any particular statute or the proceedings thereunder. So, here, the word *such* refers to adopted children without regard to how or where the status as such was acquired. "Such" is used in the statute with a meaning synonymous to "of that kind" or "of the like kind." See, 60 C. J. p. 986.

Our conclusion is that Marilyn's status as a child of her adoptive father is governed by the law of Illinois and that her right to inherit from his mother the property here involved is governed by the

law of Minnesota. Under our law, she is entitled so to inherit. There should be an affirmance.

Affirmed.

[1]Reported in 15 N. W. (2d) 524.