In re the Petition to Adopt: C.M.A.

No. C6–96–1507.

Court of Appeals of Minnesota.

Dec. 24, 1996.

Suzanne Born, Minneapolis, for Appellant Birth Mother.

Nancy A. Wiltgen, Leonard, Street and Deinard, Minneapolis, for Appellants Adoptive Parents.

Wright S. Walling, Jody Ollyver DeSmidt, Walling & Berg, P.A., Minneapolis, for Respondent Birth Father.

Considered and decided by HUSPENI, P.J., and PARKER and LANSING, JJ.

## OPINION

LANSING, Judge.

C.M.A.'s birth mother and his adoptive parents appeal a district court order granting the child's alleged biological father's motion to vacate an adoption decree. We reverse, concluding as a matter of law that the statutory notice provisions were not violated, the Interstate Compact on the Placement of Children violation does not warrant vacation of the adoption decree, and the failure to identify a biological father not entitled to notice of the proceedings does not constitute fraud upon the court. The alleged biological father asserts an additional argument raised but not decided in the district court—that the Minnesota statutes applicable to agency adoptions are unconstitutional. We remand for the district court to address the merits of the constitutional challenge to the Minnesota adoption statutes.

## FACTS

C.M.A. was conceived in early 1995. His birth mother is K.M., who was then married to, but separated from, M.J.M. At the time of C.M.A.'s conception, K.M. had been involved in a sexual relationship with K.P. for over two years. The birth mother and K.P. both reside in New Hampshire.

In the spring of 1995, the birth mother informed K.P. that she was pregnant and that her anticipated due date was November 1, 1995. She claims that K.P. advised her to terminate the pregnancy and ended their relationship. In July 1995 K.P., through an attorney, expressed interest in retaining his parental rights. In response the birth mother, through her attorney, advised K.P. that she was unemployed because of her pregnancy and that under New Hampshire law, he

had an obligation to provide prebirth financial support. K.P. did not provide the birth mother any assistance during the pregnancy.

The birth mother began making arrangements for C.M.A.'s adoption during July 1995. Through a licensed Minnesota adoption agency, the birth mother identified D.A. and E.M. as prospective adoptive parents. C.M.A. was born on October 11, 1995, in New Hampshire. The prospective adoptive parents traveled to New Hampshire for the birth. They returned to Minnesota, with C.M.A. and his birth mother. K.P.'s name did not appear on the birth certificate.

On October 14, 1995, the birth mother signed an agreement conferring authority on the Minnesota adoption agency to place C.M.A. for adoption, and C.M.A. was placed with his prospective adoptive parents. The mother's consent to C.M.A.'s adoption became final on October 27, 1995.

K.P. learned of C.M.A.'s birth on October 20, 1995, but was unaware that C.M.A. had been taken out of the state of New Hampshire. On October 25, 1995, K.P. signed a notice of his claim of paternity, and he maintains that he filed it on that day with the New Hampshire Office of Child Support Enforcement. He also sent advisory letters of this claim to the New Hampshire Compact Administrator's office, to New Hampshire probate courts, and to numerous adoption agencies in the New Hampshire area.

K.P.'s attorney also sent the birth mother's attorney in New Hampshire a letter asserting K.P.'s paternity. The birth mother's attorney contacted the adoptive parents' attorney in late October, informing her of the letter and of a related telephone conversation with K.P.'s attorney. According to the adoptive parents' attorney, the birth mother's attorney stated that she had investigated the birth father registry in New Hampshire and determined that no one had registered as C.M.A.'s birth father prior to October 14, 1995, the date that the birth mother had given her consent to C.M.A.'s adoption.

K.P. filed a petition to establish paternity in New Hampshire on October 30, 1995. He served the petition on the birth mother on November 8, 1995.

The prospective adoptive parents filed a petition in a Minnesota district court on November 14, 1995, to adopt C.M.A. Neither the agency nor the adoptive parents attempted to obtain K.P.'s consent to the adoption. The birth mother's husband, as the "presumptive father," signed an agreement conferring authority on the Minnesota adoption agency to place C.M.A. for adoption on January 5, 1996.

The district court held a hearing on the petition for adoption on January 16, 1996. The adoptive parents testified that they did not know the biological father. Their attorney stated that they had obtained consent to the adoption from the birth mother's husband, and that his consent would become irrevocable after January 22, 1996. No one informed the court (and the adoptive parents and their attorney maintain that they did not know) that K.P. had brought a paternity action in New Hampshire which was then pending. The Minnesota court granted the petition for adoption, and the decree of adoption was filed on January 23, 1996.

K.P. sought discovery through the New Hampshire court system from the birth mother to locate C.M.A. Through the New Hampshire proceedings, K.P. learned on February 12, 1996, that C.M.A. had been adopted in Minnesota.

K.P.'s petition to establish paternity was dismissed in New Hampshire on February 21, 1996, on the ground that he had not timely filed notice of his claim of paternity under N.H.Rev.Stat.Ann. § 170–B:5–a(c) (1994). His subsequent motions for reconsideration were denied. The adoptive parents and their attorney maintain that they learned of the paternity action after it had been dismissed, one month after the finalization of C.M.A.'s adoption.

K.P. moved to vacate the adoption decree in Minnesota on March 29, 1996. The district court granted the motion, and the birth mother and adoptive parents appeal.

## ISSUES

I. Does a biological parent's untimely filing of a claim of paternity in another state

entitle him to notice of adoption proceedings under Minn.Stat. § 259.51 (1994)?

II. Did the district court abuse its discretion by vacating the adoption decree on the basis of a violation of the Interstate Compact on the Placement of Children?

III. In an adoption proceeding involving a child placed by a licensed adoption agency, does fraud upon the court result from the nondisclosure of the identity of the child's biological father by the birth mother, adoptive parents, or their attorneys?

## ANALYSIS

### I

■ The district court's first basis for vacating the adoption decree was that the adoptive parents were required to give notice to the child's biological father and to obtain his consent to the adoption, but that they had failed to do so.

■ The issue of whether K.P. was entitled to notice of the adoption proceedings requires an interpretation of the applicable statutes and thus presents a question of law that we review de novo. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985); *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). Citing the Full Faith and Credit Clause of the United States Constitution, C.M.A.'s birth mother and adoptive parents argue that the dismissal of K.P.'s paternity claim in New Hampshire should preclude him from challenging C.M.A.'s Minnesota adoption. U.S. Const. art. IV, § 1 ("Full Faith and Credit shall be given in each State to the * * * judicial Proceedings of every other State."). That provision of the Constitution requires a state to credit decisions of another state with respect to issues "that have been fully and fairly litigated" in that other state. *United Bank v. Fales*, 405 N.W.2d 416, 417 (Minn.1987).

■ The superior court in New Hampshire dismissed K.P.'s paternity claim on the ground that he had not timely filed notice of his claim of paternity under N.H.Rev.Stat. Ann. § 170–B:5–a(c) (1994), and that, there-fore, that court lacked jurisdiction to conduct proceedings to establish C.M.A.'s paternity. But the New Hampshire court expressly declined to address whether K.P. had a right to contest C.M.A.'s adoption in Minnesota. Because issues specifically relating to K.P.'s right to contest a Minnesota adoption were not fully litigated in the New Hampshire court, we give full faith and credit only to the New Hampshire court's determination that K.P.'s filing of notice of his claim of paternity was untimely under New Hampshire law. K.P. is not precluded from raising issues relating to his claimed rights in adoption proceedings in a Minnesota court. Moreover, in determining the validity of a Minnesota adoption, we are generally required to apply Minnesota law. *See In re Youmans' Estate*, 218 Minn. 172, 180, 15 N.W.2d 537, 541 (1944); *see also* Restatement (Second) of Conflict of Laws § 289 (1969) ("A court applies its own local law in determining whether to grant an adoption.").

The Minnesota adoption statutes provide that, although a child's parents must generally give their consent before the child can be adopted, consent is not required "of a parent not entitled to notice of the proceedings." Minn.Stat. § 259.24, subd. 1(a) (1994). A biological parent is entitled to notice of adoption proceedings in Minnesota if one of the following conditions has been met:

(a) The person's name appears on the child's birth certificate, as a parent, or

(b) The person has substantially supported the child, or

(c) The person either was married to the person designated on the birth certificate as the natural mother within the 325 days before the child's birth or married that person within the ten days after the child's birth, or

(d) The person is openly living with the child or the person designated on the birth certificate as the natural mother of the child, or both, or

(e) The person has been adjudicated the child's parent, or

(f) The person has filed an affidavit pursuant to section 259.51.

Minn.Stat. § 259.49, subd. 1 (1994).

K.P. argues that he qualifies under subdivision 1(f), as a person who "has filed an affidavit pursuant to section 259.51." Under section 259.51 a biological parent.may retain his parental rights if "within 90 days of the child's birth or within 60 days of the child's placement with prospective adoptive parents, whichever is sooner, [the parent] gives to the division of vital statistics of the Minnesota department of health an affidavit stating intention to retain parental rights." Minn. Stat. § 259.51, subd. 1 (1994). Although K.P. did not file such an affidavit with the Minnesota Department of Health within the requisite time period, the district court concluded that K.P. substantially complied with Minn. Stat. § 259.51, subd. 1, by filing a similar document in New Hampshire within sixty days of C.M.A.'s placement with his then prospective adoptive parents.

▮▮▮▮ We recognize that strict compliance with the affidavit requirement is not necessary to satisfy Minn.Stat. § 259.51, subd. 1. *See In re Welfare of A.M.P.*, 507 N.W.2d 616, 620–21 (Minn.App.1993) (finding substantial compliance when declaration of parentage submitted to county within time limit but not filed with Minnesota Department of Health until after time limit expired). But K.P. did not attempt to file an affidavit in Minnesota even when he learned of K.P.'s location. We decline to hold that K.P.'s New Hampshire paternity claim—which a New Hampshire court has held to be untimely under the laws of that state—substantially complies with the affidavit requirement of Minn.Stat. § 259.51, subd. 1. Consequently, K.P. was not entitled to receive notice of the adoption proceedings, and his consent was not required for the adoption.

## II

▮▮▮▮ The district court also based the vacation of the adoption decree on a violation of the Interstate Compact on the Placement of Children (ICPC), Minn.Stat. § 257.40 (1994). We concur with the district court insofar as it concluded that a violation of the ICPC occurred, but we disagree that vaca-

tion of the adoption decree is an appropriate remedy under the circumstances of this case.

The ICPC requires that, before a child can be transported from one state to another for the purpose of adoption, the "sending agency" must "furnish the appropriate public authorities in the receiving state written notice of the intention to send, bring, or place the child in the receiving state." Minn.Stat. § 257.40, art. III (1994). The ICPC definition of "sending agency" includes people as well as adoption agencies. Minn.Stat. § 257.40, art. II(b) (1994).

An exception to the ICPC notice requirement applies to "[t]he sending or bringing of a child into a receiving state by his parent, step-parent, grandparent, adult brother or sister, adult uncle or aunt, or his guardian and leaving the child with any such relative or nonagency guardian in the receiving state." Minn.Stat. § 257.40, art. VIII (1994). C.M.A.'s birth mother and his adoptive parents construe this provision as allowing an exception whenever a parent transports a child from one state to another and leaves the child with a licensed adoption agency. Such an interpretation is contrary to the plain meaning of the statute, i.e., that the exception will only apply if a parent, or other relative listed in the statute, brings a child into a state *and* then leaves the child with another relative or *nonagency* guardian. *See* Bernadette W. Hartfield, *The Role of the Interstate Compact on the Placement of Children in Interstate Adoption*, 68 Neb.L.Rev. 292, 300 (1989) (describing limitation as exempting "placements made by a close relative or a guardian with a close relative or non-agency guardian"); *cf.* Minn.Stat. § 645.16 (1994) (absent ambiguity, words in a statute shall be given their plain meaning).

·The ICPC does not clearly define the penalties that should apply when a person, rather than an agency, fails to comply with the compact's notice requirements. *See* Minn. Stat. § 257.40, art. IV (1994) (allowing suspension or revocation of license of violating agency and providing that state may punish violations "in accordance with its laws"). K.P. argues that the vacation of an adoption decree should be an appropriate penalty for

people who violate the ICPC, and at least one court has imposed this penalty. *In re Adoption/Guardianship No. 3598,* 109 Md. App. 475, 675 A.2d 170 (1996), *cert. granted,* 342 Md. 582, 678 A.2d 1047 (1996). The Maryland Court of Appeals evaluated the penalty by considering the best interests of the child, and whether the adoptive parents and their attorney knowingly violated the ICPC; impaired the rights of a natural parent; violated more than a technical procedure; impeded the sending state's jurisdiction to determine the best interests of their children; circumvented a sending state's laws; and did this to enhance the adoptive parents' ability to form emotional ties with the child in order to dictate adoption in the receiving state's courts. *Id.,* 675 A.2d at 184.

Prior to C.M.A.'s adoption, the adoptive parents' attorney contacted the Department of Human Services to inquire whether notice was required. According to the attorney, this inquiry confirmed her understanding that the state did not require notice and that this policy was still being followed. The district court found that the adoptive parents' attorney had acted in reliance on information she received from a representative of the Minnesota Department of Human Services, yet the court concluded that the violation required the vacation of the adoption decree. We disagree. Although an analysis of some factors under the Maryland test is arguably favorable to K.P., we conclude that overall the factors weigh more favorably on the side of the birth mother and the adoptive parents. In particular the record contains no evidence to suggest that the birth mother, the adoptive parents, or their attorneys knowingly violated the ICPC, that they intended to circumvent the laws of New Hampshire in order to effectuate the adoption, or that they violated the ICPC for the purpose of enhancing the child's bond with his adoptive parents. We therefore hold that the district court erred in vacating the adoption decree on the basis of a violation of the ICPC.

### III

■ The district court's final basis for vacating the adoption decree was the determination that C.M.A.'s birth mother, his adoptive parents, and their attorneys had committed fraud upon the court by not informing the court of K.P.'s identity and his pending paternity action in New Hampshire.

■ "Fraud upon the court" exists when "a court is misled as to material circumstances, or its process is abused, resulting in the rendition of a judgment which would not have been given if the whole conduct of the case had been fair." *Halloran v. Blue & White Liberty Cab Co.,* 253 Minn. 436, 442, 92 N.W.2d 794, 798 (1958). The misrepresentations and failures to disclose information must be material and intentional. *Maranda v. Maranda,* 449 N.W.2d 158, 165 (Minn.1989).

On the facts of this case, we conclude that the undisclosed information about K.P. was not a material circumstance that the parties to the adoption proceeding were required to disclose. By the time of the adoption hearing on January 16, 1996, more than sixty days after C.M.A.'s placement with the adoptive parents, K.P. had not filed an affidavit asserting his intention to retain his parental rights in Minnesota and thus was not entitled to receive notice of the adoption proceeding or to give his consent to the adoption.

Although the biological father's lack of information on C.M.A.'s location obviously affected his ability to comply, the record also establishes that K.P. had not timely filed a claim of paternity in New Hampshire. Attorneys for the birth mother and the adoptive parents knew that, at the time that the birth mother gave her consent to C.M.A.'s adoption on October 14, 1995, K.P. had not registered as C.M.A.'s birth father in New Hampshire. They understood that K.P.'s failure to register deprived him of the right to establish paternity under the laws of that state. The record further demonstrates that the adoptive parents and their attorney knew little about C.M.A.'s biological father, had never met him, and did not come to know of his New Hampshire paternity action until after it had been dismissed. In addition the adoptive parents and their attorney claim that they tried to avoid confusing the district court about the biological father, by referring

to the birth mother's husband during the proceedings as the "presumed father" and not as the "biological father."

The evidence does not support a conclusion that the birth mother, the adoptive parents, and their attorneys intended to mislead the district court. Their nondisclosure to the district court of information about the biological father thus does not provide a basis for the vacation of the adoption decree. The nondisclosure of K.P.'s identity may have created confusion in the district court, but his identity was not material to the proceedings, and the nondisclosure did not constitute fraud upon the court.

## IV

■ K.P. raises a fourth basis for upholding the district court's vacation of the adoption decree. He asserts that the Minnesota statutes applicable to agency adoptions differ from the statutes governing direct adoptive placements and that the differences violate the Due Process and Equal Protection Clauses of the United States Constitution and the Minnesota Constitution. Although K.P. raised this constitutional challenge below, the district court did not address it in the vacation order.

■ Because K.P. did not notice review of his constitutional challenge, the birth mother and the adoptive parents contend that he is precluded from obtaining a resolution of the issue.[1] Rule 106 of the Minnesota Rules of Civil Appellate Procedure provides for the filing of a notice of review by a respondent seeking to challenge issues determined adversely to him in the district court. Minn.R.Civ.App.P. 106. A notice of review is not required, however, in order for a respondent to preserve issues not decided by the district court. *Hoyt Inv. Co. v. Bloomington Commerce & Trade Ctr. Assocs.*, 418 N.W.2d

173, 175 (Minn.1988). Consequently, while undecided questions are usually not appropriate for appellate review, the failure to file a notice of review in such cases does not preclude a respondent from seeking a remand for the district court to decide issues that it had previously declined to address. *Id.* at 175–76. Although K.P. has not explicitly requested a remand, we conclude that such a disposition is appropriate on the issue of the constitutionality of the adoption statutes that apply in this case.

## DECISION

K.P.'s untimely paternity claim in New Hampshire, unaccompanied by any attempt in Minnesota to file an affidavit of his intention to retain his parental rights, did not constitute substantial compliance with the affidavit requirement of Minn.Stat. § 259.51, subd. 1 (1994), and did not entitle him to receive notice of C.M.A.'s adoption proceedings. The failure of the birth mother and the adoptive parents to notify the Minnesota Department of Human Services of their intent to bring C.M.A. to Minnesota for the purpose of adoption violated the Interstate Compact on the Placement of Children; but the unknowing violation does not provide an adequate basis for vacating the decree. The nondisclosure of the alleged biological father's identity to the district court did not result in fraud upon the court. Because the district court did not address K.P.'s constitutional challenge to the applicable adoption statutes, K.P.'s failure to file a notice of review of that issue on appeal does not preclude him from obtaining a determination of the issue in the district court on remand.

**Reversed and remanded.**

---

1. The birth mother and the adoptive parents also argue that K.P.'s constitutional challenge should be barred by his alleged failure to notify the attorney general of his intent to challenge the adoption statutes on appeal pursuant to Minn. R.Civ.App.P. 144. K.P. served notice on the attorney general's office of his motion for oral arguments three months before they were eventually scheduled. Although the motion did not explicitly allude to K.P.'s constitutional challenge, approximately five weeks before oral arguments K.P. also served the attorney general's office with a copy of his appellate brief which detailed his arguments in support of his constitutional challenge. Although rule 144 does not specify the manner in which notice to the attorney general's office must be made, we find that K.P.'s actions complied with the notice requirements of the rule. *See* Minn.R.Civ.App.P. 144 (requiring that party challenging constitutionality of statute "shall notify the attorney general within time to afford an opportunity to intervene").