(No. 22525.—)
CHARLES ASHLOCK *et al.* Defendants in Error, *vs.* GLENN
WING ASHLOCK, Plaintiff in Error.

*Opinion filed April 12, 1935.*

Jones, C. J., took no part.

Frank A. Whiteside, for plaintiff in error.

W. J. Chapman, and Coyle & McDonald, (Jack Mc-Donald, of counsel,) for defendants in error.

Mr. Justice Shaw delivered the opinion of the court:

A decree entered by the circuit court of Greene county ordered partition of a parcel of real property, allotting to the legal heirs of Jehu Ashlock their respective portions of one-half and to the surviving husband and step-son of Emma Kate Ashlock McMahon an undivided one-fourth, respectively. Glenn Wing Ashlock, who claims to be the adopted son of Jehu Ashlock and Emma Kate Ashlock McMahon, prosecutes this writ of error to review the record.

The pertinent facts disclosed by the pleadings and the evidence are as follows: William Wing was born March 27, 1890. He was the second of three children of William and Elizabeth Wing. His father died on March 17, 1893, and the mother on the seventh day of the following May. Prior to her death Elizabeth Wing called Martha Agnes Stout, a friend in whose house and with whom she and the three children resided after the death of William Wing, and told her that she was aware of her impending death;

that she desired her to keep the youngest child, a baby born on January 20, 1893, and to find good homes for the two older children as soon as possible. About two months later Jehu Ashlock and Emma Kate Ashlock, his wife, advised Mrs. Stout of their desire to take one of the children left in her care. On the day following this conversation they called at the residence of Mr. and Mrs. Stout for the purpose of seeing the boy. They asked permission to take the child with them for one week, stating that if satisfied with the boy they would keep him and furnish him a home the same as if their own child. Permission to take him was granted and he resided with Jehu Ashlock and his wife, and after the former's death with Mrs. Ashlock until he attained his majority.

In December, 1895, Jehu Ashlock filed a petition in the county court of Greene county to adopt William Wing and to change his name to Glenn Wing Ashlock, pursuant to the provisions of an act approved by the General Assembly on February 22, 1867. The petitioner alleged that he was a resident of Greene county; that he was desirous of adopting William Wing, who was then five years of age, in order to render him capable of inheriting his estate; that the child's parents were dead; that he had no other relative who would consent to adopt him and that it would be to his interest to become the adopted child of the petitioner. The decree entered by the county court on December 14, 1895, found: "And now on this day the above cause coming on to be heard upon the petition and proofs adduced in support of facts therein stated, and it appearing to the court, from the petition and evidence herein, that said petitioner is a resident of said county and desirous of adopting said child; that said child is a male and of the age of five years on the 27th day of March, A. D. 1895, and further, that said petitioner desires the name of said child changed to that of Glenn Wing Ashlock; that the parents of said child are dead, and it also appearing to the court

that Katie Ashlock, wife of said Jehu Ashlock, in open court consents to the adoption of said child, and that it would therefore be to the interest of said child to be the adopted child of said petitioner: It is therefore ordered and adjudged by the court that the said William Wing be the adopted child of said petitioner and capable of inheriting his estate; that the name of said child be changed to that of Glenn Wing Ashlock, and that the said petitioner pay the costs of this proceeding."

Jehu Ashlock died intestate on June 3, 1907, leaving him surviving his widow, Emma Kate, but without descendants. At the time of his death he owned in fee simple lot 35 and the house situated thereon, in Sharon, Calvin & Morrow's addition to the city of Carrollton, and he, with his wife and Glenn Wing Ashlock, occupied these premises for a number of years as a homestead. Following his death Mrs. Ashlock continued to occupy the premises as her homestead until her marriage to Michael E. McMahon in November, 1915. Thereafter she and her second husband resided on the premises until her death, which occurred on May 6, 1920. Mrs. McMahon died testate, and her will was admitted to record by the county court of Greene county. The testatrix by her will bequeathed $3000 to Glenn Ashlock, whom she designated as her adopted son. By the third clause of the will she devised a life estate in lot 35 and two other parcels of real property to her husband. By the fourth and fifth clauses she devised the remainder in fee of lot 35 to Raymond McMahon, her step-son, and the remainder of the two other parcels of real estate to Glenn Ashlock. Within one year following the testatrix's death her husband filed his renunciation of the provisions of the will and elected to take in lieu thereof his statutory share of her estate.

On August 2, 1921, Glenn Ashlock filed a bill of complaint in the circuit court of Greene county against Michael McMahon, Raymond McMahon and the heirs-at-law of

Jehu Ashlock, deceased. By his bill, in addition to the facts previously set forth, the complainant alleged that Jehu Ashlock and his wife made an oral agreement with Mrs. Stout to adopt him. The relief sought was the entry of a decree declaring him to be the adopted son of Jehu Ashlock, and, as his adopted son, the sole owner, by inheritance, of lot 35, and the cancellation of the devise of lot 35 in the will of Mrs. McMahon as a cloud upon his title. Amendments were filed to the bill, and on August 20, 1923, he filed an amended bill. Michael McMahon interposed a demurrer to the amended bill and the demurrer was sustained. On April 24, 1925, the complainant filed amendments to the amended bill. A demurrer to it was also sustained, and on April 24, 1926, he filed a second amended bill setting forth the rights claimed in his original amended bill and the amendments thereto. The relief sought by this last amended bill was the entry of a decree finding him vested with the fee title to lot 35; directing McMahon to surrender possession and account for the rents, issues and profits since the death of Mrs. McMahon; finding the third and fourth clauses of her will void to the extent they purported to convey any right, title or interest in the premises; finding the appearance in open court of Jehu Ashlock's wife equivalent to her joining in the prayer of the petition for adoption, and that the defendants were estopped from denying he was the adopted son of Jehu Ashlock and his wife. Demurrers were filed to this second amended bill on February 3, 1927, and on the 22d day of the following April were sustained. The complainant elected to abide by his pleading, and an order was entered dismissing it for the want of equity. On the same day, namely, February 3, 1927, Charles Ashlock, a brother, and thirty other legal heirs of Jehu Ashlock, filed a cross-bill for the partition of lot 35. Michael McMahon, his son, and Glenn Ashlock, were made defendants to the cross-bill. Answers were filed, one by Michael and Raymond McMahon and another

by Glenn Ashlock. By his individual answer the latter denied the asserted right to partition, averred that he was the sole owner of lot 35 as the heir by adoption of Jehu Ashlock, and prayed to be dismissed with his reasonable costs and charges. Exceptions to his answer were filed by the cross-complainants and overruled. Subsequently they filed a replication, and the cause was referred to the master in chancery, who heard evidence on the cross-bill and the answers. On April 8, 1932, the chancellor entered a decree finding the equities in favor of the cross-complainants and decreed partition of lot 35 among Michael McMahon, Raymond McMahon and the heirs-at-law of Jehu Ashlock, deceased, to the exclusion of Glenn Wing Ashlock. The commissioners appointed to make partition reported the value of the premises at $600. A decree of sale was entered on February 11, 1933.

The principal question presented for decision is the determination of the validity of the adoption proceedings. Their irregularity is conceded by Glenn Wing Ashlock, the plaintiff in error, but he maintains that there was a substantial compliance with the statute. The attack directed against the proceedings to adopt him being collateral, the sole inquiry to be made is whether the county court had jurisdiction to render the order.

Jurisdiction of the subject matter and of the person is each a prerequisite to the validity of a decree of adoption. (*Hook* v. *Wright*, 329 Ill. 299.) Since the parties to the adoption proceedings are not objecting, the inquiry is narrowed to jurisdiction of the subject matter. (*McConnell* v. *McConnell*, 345 Ill. 70.) In its application to courts, jurisdiction is the authority to hear and determine controversies concerning certain subjects. Jurisdiction of the subject matter is the right to hear and determine causes of the general class to which the particular cause belongs. As applied to a certain controversy, jurisdiction is the right to hear and determine that controversy. (*Woodward* v. *Ruel*,

355 Ill. 163; *Smith* v. *Herdlicka,* 323 id. 585.) Adoption proceedings did not exist at common law—they are of statutory creation. (*Musselman* v. *Paragnik,* 317 Ill. 597; *Kennedy* v. *Borah,* 226 id. 243.) The General Assembly may confer upon the county court jurisdiction to determine the questions arising in special statutory proceedings. (*Woodward* v. *Ruel, supra; People* v. *McGoorty,* 270 Ill. 610.) In adoption proceedings jurisdiction is conferred upon circuit and county courts by section 1 of the Adoption act. (Cahill's Stat. 1933, p. 68; Smith's Stat. 1933, p. 104.) Where a court is exercising a special statutory jurisdiction the record must show upon its face that the particular proceeding is one upon which the court has authority to act. Jurisdiction in such cases is never presumed, and if it does not appear by the record the judgment is void and subject to collateral attack. (*Hook* v. *Wright, supra; Rice* v. *Travis,* 216 Ill. 249; *Payson* v. *People,* 175 id. 267.) Although adoption statutes are construed liberally, to the end that the adoption may be upheld and the assumed relationship sustained, there must be a substantial compliance with the provisions of the statute conferring jurisdiction or the proceeding will be void. (*McConnell* v. *McConnell, supra; In the Matter of Bohn,* 308 Ill. 214; *Kennedy* v. *Borah, supra; VanMatre* v. *Sankey,* 148 Ill. 536; *Barnard* v. *Barnard,* 119 id. 92.) The material provisions of the statute must be complied with to render the proceedings immune from collateral attack. (*Kennedy* v. *Borah, supra; Flannigan* v. *Howard,* 200 Ill. 396.) The petition required to put the court in motion and give it jurisdiction must be in conformity with the statute granting the right and the requisite facts must appear upon the face of the petition itself. (*Hook* v. *Wright, supra; Musselman* v. *Paragnik, supra; Hopkins* v. *Gifford,* 309 Ill. 363; *In the Matter of Bohn, supra; Kennedy* v. *Borah, supra; Sullivan* v. *People,* 224 Ill. 468.) If it appears from the record that the court did not acquire ju-

risdiction of the subject matter the order of adoption is open to collateral attack. *McConnell* v. *McConnell, supra; Hopkins* v. *Gifford, supra; Flannigan* v. *Howard, supra.*

Section 1 of "An act to revise the law in relation to the adoption of children,". approved February 27, 1874, in force July 1, 1874, and at the time of the adoption proceeding in 1895, specifically provided that the prayer of a petition by a person having a husband or wife, for leave to adopt a child, should not be granted unless such husband or wife joined therein, and that when they so joined the adoption should be by them jointly. (Hurd's Stat. 1895, p. 131.) The petition for the adoption of the plaintiff in error was the individual petition of Jehu Ashlock, signed only by him, and it contained no reference to his wife. It does not purport to be a joint petition such as prescribed by section 1 of the Adoption act then in force, the provisions of which are substantially the same as those in the present statute. (Cahill's Stat. 1933, p. 68; Smith's Stat. 1933, p. 104.) The statutory requirement that the petition be the joint petition of both husband and wife is an essential one, and the failure of Jehu Ashlock's wife to join therein shows that jurisdiction of the county court to entertain the proceeding was wanting. It will be further observed that the decree in question adjudged Glenn Ashlock to be the adopted son only of Jehu Ashlock, although it affirmatively appears from the decree that the latter had a wife. Neither the petition nor the decree complied with the plain mandate of section 1 of the statute, the manifest purpose of which is the restriction of adoptions, in cases where there is both a husband and a wife, to a joint adoption. Moreover, it appears from the record that the petition was prepared conformably to the provisions of the Adoption act of 1867. The earlier statute, approved February 22 and in force April 22, 1867, did not require both the husband and the wife to join in petitions to adopt children. (Laws of 1867, p. 133.) The act of 1867 was,

however, superseded by the act of 1874, which was in effect at the time of the adoption proceedings in controversy. Manifestly, the act of 1867 did not govern an adoption proceeding instituted more than twenty-one years after the law had been changed.

One of the questions presented for decision in *Watts* v. *Dull*, 184 Ill. 86, was the effect of the failure of the petitioner's husband to join in the petition for adoption. This court held that the petition was insufficient to confer jurisdiction and that the adoption decree was a nullity. The plaintiff in error asserts that this decision is not controlling because it was predicated on the doctrine of strict compliance. In the recent case of *McConnell* v. *McConnell*, *supra*, where it was announced that the rule of strict compliance was no longer adhered to, we expressly referred to the decision in the *Watts case* as correct for the reason that there had not been substantial compliance with the statute. The rule of substantial compliance invoked by the plaintiff in error cannot avail him, for in the present case there was no compliance with the specific requirement of section 1 of the statute to join the wife of the adoptive parent in the petition.

An analogous situation was also presented in *Davis* v. *McGraw*, 206 Mass. 294. In the case cited it appeared that a statute of the commonwealth of Massachusetts provided that if a person petitioning the probate court for leave to adopt a child had a husband or wife competent to join in the petition such husband or wife should join therein and upon adoption the child should in law be the child of both. The petition for the adoption of Lucy D. McGraw was signed by Frederick H. Davis alone, although he had a wife. In holding that the decree of adoption subsequently entered was void for want of jurisdiction and subject to collateral attack the Supreme Judicial Court of Massachusetts said: "There is no such thing in this commonwealth as an adopted child of one spouse alone if hus-

band and wife are both living at the time of the adoption. The child is the child of both, and so should the decree run. In the present case there was a wife competent to join in the petition. The decree therefore does not conform to the law and is not such a decree as the court had the power to make. But the objection to the validity of the decree goes deeper. In order that the probate court shall have jurisdiction to act, it is necessary, where husband and wife are both living and each is competent to join in the petition, as was the case here, that both should sign the petition. The joinder of the wife is a condition precedent to the power of the court to consider the case. The court not having jurisdiction the decree was absolutely void and of itself furnished no protection to anyone acting under it, even although acting in good faith."

The county court of Greene county had jurisdiction of adoption proceedings by the statute, but it did not acquire jurisdiction of the particular proceeding owing to the failure of the wife of the adoptive parent to join her husband in his petition to adopt the plaintiff in error. Again, the county court transcended the limits of the jurisdiction specially conferred when it entered the order decreeing him to be the adopted child of Jehu Ashlock. The order of adoption, therefore, is vulnerable to collateral attack.

The plaintiff in error argues, however, that the finding in the order to the effect that Emma Kate Ashlock appeared in open court and consented to his adoption by her husband shows a compliance with the statutory command that both adoptive parents join in the petition. Jehu Ashlock sought the entry of an order declaring the plaintiff in error to be his adopted child, and the order rendered was in conformity with the prayer of the petition. There is nothing in either the petition or order which can be construed to mean that the purported adoption was made jointly. The authority of the county court to enter adoption decrees rests in the statute and not in the acquiescence

to the rendition of an invalid order by one required by the law to be a party to the proceeding.

The second contention of the plaintiff in error is, that the defendants in error are estopped from questioning the validity of the proceeding by which Jehu Ashlock attempted to adopt him. Where an order of adoption is invalid owing to the court's want of jurisdiction of either the subject matter or of the persons it is subject to collateral attack. In such cases there is no estoppel by judgment. *Keal* v. *Rhydderck*, 317 Ill. 231; *Bartholow* v. *Davies*, 276 id. 505.

The plaintiff in error's third and final contention is, that, irrespective of the invalidity of the adoption proceeding, the oral contract of adoption alleged to have been made should be specifically enforced. He is not now, however, in a position to urge this contention. By his bill filed in 1921, and the subsequent amendments and amended bills, he did seek specific performance of that agreement. The record further discloses that on April 27, 1927, final disposition of his second amended bill was made when demurrers to it were sustained and a decree entered dismissing it for the want of equity. The plaintiff in error did not prosecute an appeal from that decree and it remains in full force and effect. This writ of error was sued out on April 6, 1934, to obtain a reversal of the decree entered on April 8, 1932, upon the cross-bill of the defendants in error and the answers thereto. Affirmative relief cannot be granted on the answer of the plaintiff in error. Indeed, it appears that he recognized he was not entitled to the relief now sought when he prayed to be dismissed with his reasonable costs and charges.

The decree of the circuit court is affirmed.

*Decree affirmed.*

Mr. CHIEF JUSTICE JONES took no part in this decision.