(No. 39695.—)

LOUISAN E. MAMER *et al.*, Appellees, *vs.* L. F. MORRISON *et al.*, Appellants.

*Opinion filed May 23, 1966.—Rehearing denied September 21, 1966.*

134

G. R. Schwarz, of Jerseyville, and Craig & Craig, of Mattoon, (Jack E. Horsley and John H. Armstrong, of counsel,) for appellants.

Richard W. Husted, of Elgin, and Thomas, Mulliken & Mamer, of Champaign, for appellees.

Mr. Justice House delivered the opinion of the court:

We allowed a petition for leave to appeal a Fourth District Appellate Court judgment affirming issuance by the circuit court of Jersey County of a permanent injunction against collection of certain drainage district annual maintenance assessments authorized by the county court of that county.

In 1906 the Nutwood Drainage and Levee District was organized. In 1907, pursuant to statute, judgment was entered on a jury verdict fixing the amounts which might thereafter be levied annually against the lands within the district for maintenance purposes. Plaintiffs are the owners of substantial acreage therein, and the annual benefits to their land were determined by the 1907 proceedings to be $347.59, which plaintiffs have always been willing to pay.

A brief summary of drainage district practices, as statutorily provided, may be helpful to an understanding of the instant problem. We are concerned with amounts levied for annual maintenance benefits. Such amounts were, during

the periods involved here, initially determined in county court proceedings instituted by commissioners of the district and heard by juries, in which judgment was entered upon verdicts determining the amounts which might thereafter be collected annually from individually described tracts of land throughout the district for the purpose of paying the year-to-year costs of maintaining the drainage system within the district. (*Nutwood Drainage and Levee Dist.* v. *Mamer*, 10 Ill.2d 101.) Until increased by appropriate court and jury action, the amount so determined was the maximum collectible from a given tract during any given year. (*Drainage Comrs. of Hammond Mutual Drainage Dist.* v. *Ponder*, 20 Ill.2d 351, 356.) Since yearly maintenance costs varied, the commissioners were required to file annual reports with the county court stating the amount (within the maximum originally authorized) needed for the ensuing year. (*Mamer*.) Approval of such reports resulted in charges against the district lands of the percentage of the permissible maximum necessary to produce the needed funds.

Apparently, commencing prior to 1946, the commissioners of this district, without further jury action, sought to collect from the district lands for annual maintenance benefits amounts substantially exceeding those authorized by the 1907 proceedings. Plaintiffs paid these increased amounts for all years prior to 1950, but thereafter refused to pay the excess above $347.59, and in 1953 the district commissioners instituted receivership proceedings seeking appointment of a receiver for plaintiffs' lands and application of the income therefrom to payment of the assessments. During the pendency of the receivership proceedings, the commissioners also instituted proceedings in the county court to increase the amounts assessable for future annual maintenance costs; in 1955 a judgment increasing these amounts was entered in that proceeding, and an appeal was perfected to this court by plaintiffs and their predecessors. In 1956 the receivership proceedings were dismissed and the

commissioners appealed. Both appeals were consolidated and decided in *Nutwood Drainage and Levee Dist.* v. *Mamer,* 10 Ill.2d 101, and the trial courts were affirmed in both cases. This court there held no valid annual maintenance assessments existed against the plaintiffs' land for the 1950-1955 period other than those authorized in 1907.

Apparently land owners other than plaintiffs had voluntarily paid the increased assessments during the disputed years. In 1958 the commissioners filed in the county court their "Petition to Cure Defects and for the Levying of an Assessment Against Certain Lands * * *", seeking authority for assessment of annual maintenance benefits against plaintiff's lands in a total amount approximating $20,000 (the same amount originally sought to be collected) for the years 1950 through 1955. Motions to dismiss these proceedings were denied, and judgment confirming the increased assessments was entered December 28, 1961. Plaintiffs appealed. This appeal was dismissed for failure to file a timely record, and leave to appeal within one year was likewise denied.

Thereafter plaintiffs began the present injunction proceedings seeking to prevent collection, for the years 1950-1955, of any annual maintenance assessments in excess of $347.59 authorized in the 1907 proceedings. The trial court held the 1961 county court order void and enjoined collection of the increased amounts; the appellate court affirmed, and it is the propriety of that action which is now before us for determination.

Plaintiffs contend that county courts were of limited jurisdiction, having only such authority in drainage matters as is conferred by the relevant statutes; that no statutory authorization exists for retroactive increases in annual maintenance assessments and that the county court's 1961 judgment is therefore void and vulnerable to this collateral attack; that section 5—22 of the Illinois Drainage Code, (Ill. Rev. Stat. 1961, chap. 42, par. 5—22,) relied upon by

commissioners, was enacted solely to correct technical mistakes and omissions and was never legislatively intended to authorize retroactive increases in valid, existing assessments.

The position of the commissioners is that section 5—22 authorizes a new assessment whenever an assessment has been held not to have been legally made or has been declared invalid as to one or more tracts for any reason not affecting the merits of the assessment; that the increase in annual maintenance assessments was held invalid by this court in *Mamer,* and therefore they were entitled to proceed under 5—22 to reassess these lands for the 1950-1955 period. In the commissioners view the county court's order was within the scope of 5—22 and, whether rightly or wrongly entered, is immune from the collateral attack involved in this case. The commissioners stress the benefits received by the land of plaintiffs and the inequitable aspects inherent in permitting plaintiffs to avoid payment of assessments commensurate with the benefits conferred.

It is clear that the jurisdiction of county courts in drainage matters was derived solely from the Illinois Drainage Code, (Ill. Rev. Stat. 1961, chap. 42, pars. 1—1 *et seq.*) In such special statutory matters ordinary presumptions as to jurisdiction did not obtain, and exercise by the court of the statutorily conferred power, including its finding of jurisdiction, could be collaterally re-examined to determine whether the judgment transcended the power so conferred. (*Mamer; Thayer* v. *Village of Downers Grove,* 369 Ill. 334, 339; *People ex rel. Lange* v. *Old Portage Park Dist.* 356 Ill. 340, 343-4-5; *Ashlock* v. *Ashlock,* 360 Ill. 115, 121.) We must, then, determine whether the statute granted to the county court power to enter its order of December 28, 1961, and, if so, whether the statutory conditions precedent to an exercise of that power were present in the context of this case.

Resolution of this question requires reference to section

138

5—22 of the Drainage Code upon which the 1958 petition of the commissioners was predicated. It provides:

"When it appears to the commissioners that by reason of omission, mistake, irregularity or improper or insufficient notice or for any other reason not affecting the merits of the assessment, land or other property in the district subject to an assessment has been omitted from an assessment roll, or an assessment has been annulled or held not legally made or is invalid as to one or more tracts of land or other property situated in the district, then the commissioners may petition the court praying that the defects be cured and that an assessment be levied against such lands. The petition shall describe the land or other property sought to be assessed, state the amount of the benefits, if any, assessed against such land or other property, and recite the omission, mistake, irregularity or defect which annulled or invalidated the assessment. * * *"

This section is a codification of pre-existing provisions found in sections 60, 61 and 61a of the former drainage law. (Ill. Rev. Stat. 1963, chap. 42, pars. 59, 60, 60a.) It is patently a corrective and remedial provision containing designedly broad and well-nigh all-inclusive phraseology. Its purpose is, we believe, to enable drainage commissioners to recover from benefitted lands their proportionate share of construction, repair or maintenance costs in those instances where the initial attempt to assess such costs was ineffective for any reason not affecting the merits of the assessment; to authorize the commissioners to proceed with reassessment action in such cases where prior assessments have been held invalid, and to make such new assessments for the same years for which the invalidated action was intended. That the "merits of the assessment" were not affected here it seems to us is apparent both from the *Mamer* opinion and the later confirmation by jury verdict and court order of new assessments in the same amounts for the same years.

To construe this section as only prospective in its operation would ignore its plain intent. Unless the remedial action which it contemplates may be retroactive, the section serves no useful purpose, for new assessment proceedings, operative as to future years, would always be available to the commissioners when earlier assessments are held invalid. In our opinion, section 5—22 is somewhat analogous to the provisions of section 2—72 of article 9 of the Municipal Code of 1961 (Ill. Rev. Stat. 1965, chap. 24, par. 9—2—72.) which was found in the former Local Improvements Act and provides a method of reassessing property as to which a special assessment for the cost of property improvements has been declared invalid or void. See *City of Mattoon* v. *Stump*, 4 Ill.2d 100.

Nor are we impressed by plaintiffs' argument that such retroactive assessment exposes farm owners and purchasers to the possibility that drainage commissioners will seek to burden farm lands with liens for drainage benefits extending back in time to creation of the district. The statute contemplates such action only when a prior assessment for the same years has been invalidated in whole or in part, and certainly prospective purchasers may easily and adequately protect themselves under such circumstances. While plaintiffs suggest the construction of the statute herein adopted poses grave constitutional questions, no such specific problems are raised or argued.

The apparent legislative intent was to provide a method whereby the governing bodies of drainage districts would be enabled to recover from the benefitted lands the amount of such benefits even though the assessment thereof was originally improperly made. Absent such statutory authorization, income for the years for which the assessments were invalidated would be forever lost to the district even though the work for which the assessments were intended to pay had been accomplished and the land improved thereby. The resulting financial problems of the district are readily ap-

parent and their elimination seems to us a quite logical legislative objective.

The fact that this court in *Mamer* held the 1907 assessment roll to be the only valid and enforceable lien against plaintiffs' land does not militate against the construction of section 5—22 here adopted. That decision simply held invalid the commissioners' attempt to assess increased annual maintenance benefits for the years in question. That this left the 1907 assessments in effect has, as we see it, no bearing upon the operation of 5—22, for in any case where an ineffectual effort is made to increase assessments the prior assessment will ordinarily remain effective. Certainly there appears in 5—22 nothing to justify the conclusion that its provisions may be utilized only where invalidation of an increased assessment leaves *no* obligation against the land.

The more difficult question, not dwelt on by the trial or appellate courts, is as to whether the original efforts of the commissioners to increase the amounts collectible in the 1950-1955 period constituted an "assessment" within the meaning of 5—22 for, unless they did, the section is inapplicable. The "special affirmative defense" set forth in the commissioners' answer to the complaint for injunction alleges "That during each of the years in question, that is, 1950 through 1955, inclusive, as they had each year since 1907, the commissioners * * * duly filed their commissioners' annual report and maintenance tax levy, and that during each of said years the county court of Jersey County, Illinois, entered its written order approving the commissioners' annual report and tax levy, and ordered that the commissioners proceed to collect said annual maintenance taxes, and that in each year timely notice of the filing of such annual report and maintenance tax levy was given pursuant to statute, and no objections were filed by plaintiffs or any other land owner, and all land owners, except the plaintiffs, paid the said maintenance assessments." The reply of plaintiffs denied only the materiality of these

allegations, not their truth, but plaintiffs maintain that there can be no "assessment" unless a new assessment roll is filed in accordance with the statutory requirements, and that since such was not done here in the disputed years, it cannot now be said that any "assessment" was invalidated in the original *Mamer* opinion.

Certainly the action of the commissioners was not in compliance with the statutory requirement of an assessment roll and provision for a jury determination thereon, but the clear purpose of 5—22 was and is to afford relief in those instances in which new or increased assessments fail because not accomplished as statutorily required. The fact that the failure here was a major violation of the statute rather than a minor one seems irrelevant in view of the broad scope of the remedial statute. In short, we believe the action of the commissioners during the years in question constituted an abortive assessment by the commissioners, subsequently invalidated by this court in *Mamer* because no jury had determined the amounts of such increased benefits. In our opinion this is one of the instances in which 5—22 was designed to afford relief.

We therefore conclude that the purpose and intent of the legislature in the enactment of 5—22 was to authorize the county courts to enter judgments confirming retroactive assessment of benefits for the same years in which original efforts to assess such benefits have been invalidated. It accordingly follows that the county court of Jersey County was empowered to enter an order such as it did on December 28, 1961, and that the defendant's motion to dismiss the injunction complaint in the circuit court should have been allowed.

The judgment of the Appellate Court for the Fourth District is accordingly reversed, and the cause is remanded to the circuit court of Jersey County with directions to dismiss the complaint for injunction.

*Reversed and remanded, with directions.*