*In re* UNION DRAINAGE DISTRICT NUMBER ONE OF THE TOWNS OF AFTON AND CLINTON, DE KALB COUNTY.—(UNION DRAINAGE DISTRICT NUMBER ONE OF THE TOWNS OF AFTON AND CLINTON, DE KALB COUNTY, Appellee, *v.* ROBERT PURDY *et al.*, Appellants.)

Second District (2nd Division)   No. 74-147

Opinion filed June 22, 1976.

David L. Ader, of Chicago, for appellants.

Rissman & Jenkins, of De Kalb, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:
Eight landowners (Mr. and Mrs. Harold Halfpenny, Dr. and Mrs. Robert Purdy, Mr. and Mrs. Archie Tuntland and Mr. and Mrs. Kurt Liebhaber) have appealed from an order of annexation entered March 22, 1974, by the circuit court of De Kalb County, and from an earlier order denying their motion to dismiss the petition of Union Drainage District Number One of the Towns of Afton and Clinton, De Kalb County, Illinois (District) to annex land outside the district. Each couple owns an agricultural parcel in the lands covered by the District's petition for annexation.

The appellants argue first that the trial court did not have jurisdiction to enter the order of annexation because the petition for annexation of this land to the District was not brought by "lawful commissioners of the District."

We should note at this point that we are allowing motions by the appellants and the District to amend or supplement the record on appeal; the "short record" already being part of the record on appeal, the District's motion to consider it such is denied.

The District was organized on November 9, 1904, after consideration of a written report of a competent engineer covering the agricultural lands composing the District, with maps, profiles and estimates of costs and benefits to accrue from the "constructing, repairing and maintaining a tile drain and also an open ditch within said District" so as to establish "a combined system of drainage and protection from wash or overflow." Appellants' lands lying outside the District which are involved in this appeal were not included in the District when it was established. On

February 16, 1905, drainage commissioners for the District were elected. Since that time no records were kept, the elected commissioners are deceased, the District became inactive and remained so until August 17, 1972. On that date, based on a report and petition to transfer jurisdiction of the District, an order was entered by the trial court transferring jurisdiction over the District to the circuit court of De Kalb County, pursuant to section 1—6 of the Illinois Drainage Code (Ill. Rev. Stat. 1971, ch. 42, par. 1—6).[1]

Shortly thereafter, on August 29, 1972, a petition was filed requesting a change in the selection of drainage commissioners from election to appointment as provided in section 4—6 of the Illinois Drainage Code (Ill. Rev. Stat. 1971, ch. 42, par. 4—6). The petition bore nine signatures including that of the president of De Kalb Ag Research Inc. (De Kalb Ag) and another acting under a power of attorney. The parties who signed were described in the said petition as "owners of a majority of the land" within the District. On September 15, 1972, an order was entered granting the relief requested. That order made findings that "proper notice was given * * * to all interested parties"; that the District is comprised of about 1400 acres of land owned by 15 individuals and one corporation, that the signatories requesting the change were landowners owning about 1185 acres of land within the District, and that those petitioners represent 63% of the landowners owning about 84% of the land within the District.

Pursuant to that order the De Kalb County Board of Supervisors, on October 18, 1972, appointed three landowners (including one representative of a landowner, namely De Kalb Ag) as drainage commissioners for the District. On September 26, 1973, these commissioners filed their petition on behalf of the District to annex certain lands outside the District owned by the appellants and by De Kalb Ag and by one of the commissioners and his wife (Mr. and Mrs. Donald Bend).

Section 4—6 of the Drainage Code, which sets forth the statutory procedure for change from election to appointment of drainage commissioners and for hearing thereon, provides in pertinent part as follows:

> "If at such hearing, the court determines that the petition is signed by at least 10 per cent of such owners but is not signed by a majority of such owners then the court shall order the question of whether the commissioners of the district shall be appointed in the manner provided or elected by the adult landowners of the district submitted to the adult landowners at the next annual election in the district and shall direct the clerk of the district to prepare separate

---

[1] At oral argument appellants' counsel conceded the propriety of the proceedings reactivating the District. We therefore refrain from any consideration of the validity of that order.

ballots on that question for use in that election. The ballots shall be canvassed by the judges of the election and the ballots and the results of the election returned to the clerk at the same time and in the same manner as is provided in Section 4—5 with reference to the election of commissioners.

\* \* \*

If at the hearing on the petition the court determines that the petition is signed by a majority of the adult owners of land in the district then no referendum on the question shall be necessary and the court shall thereupon order that thenceforth the annual elections of the district shall be dispensed with and thereafter the commissioners shall be appointed in the manner provided by this Act."

Appellants argue that the trial court lacked jurisdiction to enter the order of September 15, 1972, changing the method of selection from election to appointment (pursuant to which order the commissioners were appointed) because the petition for such change, having contained an allegation that it was signed by the owners of a majority of the land within the District is insufficient to support a change in the method of selection without a referendum. We do not so construe the relevant provision in the Drainage Code. What it does require is that the trial court make a determination at the hearing on the petition for such change as to the proportion of the adult owners of land in the District who signed such petition and if the court determines thereat that a majority of adult landowners have signed, no referendum shall be necessary, elections are dispensed with, and appointment of commissioners shall proceed as provided in the Act. The trial court made the requisite determination that the petition was signed by a majority of the adult landowners.

Appellants further argue that it is obvious from a comparison of that petition which bears nine signatures of landowners, and the list of 16 landowners in the District attached as Exhibit A to the petition filed to reactivate the District,[2] that a majority of the adult landowners in the District did not sign the petition, especially in light of the fact that where title to land is held jointly (by husband and wife or other joint owners) each joint owner must be counted to determine the proportion. The record here does not disclose how the court made a determination that a majority of the landowners of the District signed the petition for change in the method of selection or how the computation of percentages was made.

---

[2] De Kalb Ag is properly included as an "adult landowner" in each document under subparagraph (j) of section 1—2 of the Drainage Code which expressly states that that term "includes public and private corporations."

At oral argument counsel for the District stated that Exhibit A listed all those "who were thought to be landowners" in the District, but that such list "turned out" to be inaccurate. He did not specify how any error occurred or when it was discovered.

■■ In *Mamer v. Morrison*, 35 Ill. 2d 133, 137, the court, after pointing out that the court's jurisdiction in drainage matters was derived solely from the Illinois Drainage Code, said:

"In such special statutory matters ordinary presumptions as to jurisdiction did not obtain, and exercise by the court of the *statutorily conferred power, including its finding of jurisdiction,* could be collaterally re-examined to determine whether the judgment transcended the power so conferred."

The record of the proceeding to change the selection of drainage commissioners in the case at bar fails to indicate lack of jurisdiction to enter the order which appellants are collaterally attacking. That order includes express findings that the court has jurisdiction of the subject matter and the parties involved, and that proper notice had been given. The finding of notice cannot be contradicted on collateral attack by evidence not contained in the record of that proceeding. (*Lackey v. Pulaski Drainage Dist.*, 4 Ill. 2d 72, 79; 23 Ill. L.&Pr. *Judgments* §270 (1956).) We are, therefore, unable to conclude that the trial court lacked jurisdiction to change the method of selection of drainage commissioners for the District without a referendum.

■■ ■ Next the appellants contend that the trial court erred in accepting as expert testimony the testimony of John Loos, primarily because of his lack of experience in the design of improvements for agricultural underground drainage tile systems and his unfamiliarity with the lands and drains here involved. A trial court has broad discretion in determining if a witness has been qualified as an expert; the record here does not disclose any abuse of that discretion (*Taylor v. Carborundum Co.*, 107 Ill. App. 2d 12, 18, and *Nicte-Ha v. Teichert*, 119 Ill. App. 2d 336, 346). Mr. Loos was a registered professional engineer, has a graduate degree in municipal sanitary engineering, and his experience includes involvement with several agricultural districts in De Kalb and Kane Counties. The fact that none of the projects on which Loos had worked involved planning and designing an underground tile drainage system for an agricultural district would only go to the weight of his testimony. However, the record shows that the witness had never been on either the Liebhaber or Tuntland parcels. He did not know the condition of any of the tiles on the parcels of any of the respondents or whether they were carrying any water or were operating at top velocity. He had not made any below ground probes or inspections. Under the circumstances his testimony as to benefit to respondents' parcels was incompetent and inadmissible because of its speculative nature. (*Sommers v. American Economy Insurance Co.*, 8 Ill. App. 3d 450, 452.) The trial court, therefore, erred in denying respondents' motion to strike Mr. Loos' testimony.

■■ The District contends that the mere fact that respondents were

connected with the drainage system of the District constitutes an admission, and creates a presumption, that their parcels are benefited. However, the District's petition for annexation did not allege that respondents or their predecessors in title ever took affirmative voluntary action to connect tiles on the respondents' parcels to those of the District. It merely alleged that they were "connected to the District since on or about 1904 when the District was first organized," and sought annexation of those lands because of benefits thereto from certain specified work planned for the District. The answers of the respondents alleged that their "drains pre-existed and antedated the organization" of the District. The District filed no reply denying that allegation. It therefore stands as an admission that the tiles on respondents' lands antedated the District's organization.

■■ Moreover, the trial court had denied the District's motion for a directed verdict based on respondents' connections. The trial court stated it did so because the District had not pleaded it in its complaint and that the complaint was "phrased in the language of benefits." The District not having appealed from that ruling, its propriety is not before us. (See *Bawden v. Furlong*, 16 Ill. App. 2d 174, 185.) We are therefore in no position to alter the trial court's ruling.

■■ Respondents next contend that the order annexing respondents' lands to the District is void because it does not set forth a description of the lands annexed and of the boundaries thereof, as required by section 8—6 of the Illinois Drainage Code (Ill. Rev. Stat. 1973, ch. 42, par. 8—6). That section expressly states that "[t]he order of annexation shall include a description of the territory annexed and a description of the boundaries of that territory." Drainage law being statutory, jurisdiction must be exercised in accordance with the statutory mandate. (*Mamer v. Morrison*, 62 Ill. App. 2d 410, 412, *reversed on other grounds*, 35 Ill. 2d 133.) Because of failure to comply with that statutory requirement the order of annexation is void and of no effect.

Our holding makes it unnecessary to consider other issues raised in this appeal.

Therefore, the judgment of the circuit court of De Kalb County is reversed.

Judgment reversed.

T. J. MORAN, P. J., and DIXON, J., concur.